Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com

James B. Zouras, Pro Hoc Vice
Ryan F. Stephan, Pro Hoc Vice
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312 233 1550
312 233 1560 *f*
Email: jzouras@stephanzouras.com
Email: rstephan@stephanzouras.com

*Attorneys for Plaintiff, the general public, and all others similarly situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH OCHINERO, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>LADERA LENDING, INC., and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.  8:19-cv-01136-JVS-ADS<br><br>**NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>DATE:     Feb. 22, 2021<br>TIME:      1:30 p.m.<br>JUDGE:    Hon. James V. Selna<br><br>COMPLAINT FILED:  June 21, 2019 |

1.

1

## **NOTICE OF MOTION AND MOTION**

2  PLEASE TAKE NOTICE that on February 15, 2021 or as soon thereafter as the matter may

3  be heard by the Honorable James V. Selna of the United States District Court of the Central District

4  of California, located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, Plaintiff will

5  and hereby does move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and the

6  Fair Labor Standards Act (FLSA) for an order:

7       (1)    Preliminarily approving a proposed collective and class action settlement

8              with Defendant Ladera Lending, Inc.;

9       (2)    Preliminarily certifying the Classes for purposes of settlement;

10       (3)    Scheduling a hearing on the question of whether the proposed settlement

11              should be finally approved as fair, reasonable and adequate as to the class

12              members; and

13       (4)    Approving the manner and form of Notice and proposed distribution plan

14              to class members.

15  This motion is based on this Notice of Motion and Unopposed Motion for Preliminary

16  Approval of Settlement with Defendant, the following memorandum of points and authorities, the

17  settlement agreement filed herewith, the pleadings and papers on file in this action, and such other

18  matters as the Court may consider.

19      Dated: January 14, 2021

20                               */s/Joshua D. Buck*                .
                             JOSHUA BUCK

21                               THIERMAN BUCK LLP

22                               JAMES B. ZOURAS
                             STEPHAN ZOURAS, LLP

23

24                               *Attorneys for Plaintiff, the general public, and
                             all others similarly situated*

25

26

27

28

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT

**Table of Contents**

I.   INTRODUCTION ................................................................................................ 1

II.  LITIGATION HISTORY ..................................................................................... 2

III. SETTLEMENT NEGOTIATION BACKGROUND .................................................. 3

IV. SUMMARY OF KEY SETTLEMENT TERMS ...................................................... 4

    A.   The Settlement Class ........................................................................... 4

    B.   The Settlement Amount ....................................................................... 5

    C.   Release of Claims ............................................................................... 5

    D.   Form and Procedure of Settlement Notice .......................................... 6

    E.   Settlement Allocation Plan .................................................................. 7

    F.   Settlement Administration ................................................................... 8

    G.   Service Award/General Release Payment to Plaintiff ........................... 9

    H.   Class Counsel Fees and Costs ............................................................ 9

    I.   PAGA Notice .................................................................................... 10

V.  ARGUMENT .................................................................................................. 10

    A.   The Proposed Settlement Should be Preliminarily Approved ................ 10

        1.   The Settlement is the Result of Non-Collusive, Informed, Arm's Length Negotiations ............................................................. 12

        2.   The Settlement Does Not Suffer from Any Obvious Deficiencies ................ 13

        3.   The Settlement Does Not Provide Preferential Treatment for Segments of the Class or the Class Representatives ........................................ 13

        4.   The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses ................ 15

    B.   The Proposed Settlement Class Satisfies Rule 23 and Should be Certified ............... 16

        1.   Rule 23(a)(1): Numerosity Is Met .................................................... 16

        2.   Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class ........................................................................... 17

        3.   Rule 23(a)(3): Named-Plaintiff Ochinero's Claims Are Typical of the Claims of the Class ......................................................... 17

        4.   Rule 23(a)(4): Plaintiff Ochinero and Class Counsel Will Fairly and Adequately Represent the Interests of the Class ...................... 18

        5.   Rule 23(b)(3)'s Requirements Are Met .............................................. 18

    C.   The Court Should Confirm Thierman Buck, LLP, and Stephan Zouras, LLP, As Class Counsel And The Proposed Attorneys Fees And Costs Should Be Approved ..................... 19

    D.   Proposed Schedule for Final Approval and Dissemination of Notice ...................... 21

VI. CONCLUSION ............................................................................................... 22

i.

**Table of Authorities**

**Cases**

*Adams v. Inter-Con Security Sys., Inc.,*
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)............................................. 13

*Alaniz v. California Processing, Inc.,*
  73 F.R.D. 269 (C.D. Cal. 1976) .................................................................................................. 12

*Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) ..................................................................... 18

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997)......................................................................................................... 18, 19

*Bellinghausen v. Tractor Supply Co.,*
  303 F.R.D. 611 (N.D. Cal. 2014) ........................................................................................ 11, 12, 13

*Burden v. SelectQuote Ins. Servs.,* No. C
  10-5966 LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ................................................. 14

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) .......................................................................................... 10

*Cruz v. Sky Chefs, Inc.,*
  No. C-12-02705 DMR, 2014 WL 2089938 (N.D. Cal. May 19, 2014)............................... 11

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) .......................................................................................... 12

*Fraley,* 2012 WL 5838198, at *1 n.1 .............................................................................................. 15

*Gatreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982) ............................................................................................. 12

*Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23,
  2015) ..................................................................................................................................... 14

*Glass v. UBS Financial Services, Inc., 2007 WL 221862,* at *17 (N.D. Cal. Jan. 26, 2007).............. 14

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 2008) .......................................................................... 12, 15, 17, 19

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ............................................................................................. 17

*Harris v. vector Mktg. Corp.,*
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................. 12, 13

*In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989)........................ 20, 21

*In re Austrian and German Holocaust Litig.,*
  80 F. Supp. 2d 165 (S.D.N.Y. 2000)................................................................................... 13

*In re Bluetooth Headset Products Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ............................................................................................. 13

*In Re M.L. Stern Overtime Litigation,*
  No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. April 13, 2009)............................ 11

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 943 (9th Cir. 2015) ................................. 14

*In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 378-79 (9th Cir. 1994) ...................... 21

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................... 11, 15

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments Securities Litigation,*
  122 F.R.D. 251 (N.D. Cal. 1988)........................................................................................ 18

*Int'l Molders' & Allied Workers' Local 164 v. Nelson,*
  102 F.R.D. 457 (N.D. Cal. 1983)........................................................................................ 16

ii.

*Lightbourn v. County of El Paso,*
   118 F.3d 421 (5th Cir. 1997) .................................................................. 17
*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ............................................................ 11, 12
*Rodriguez v. W. Publ'g Corp.,*
   563 F. 3d 948 (9th Cir. 2009) ............................................................... 14
*Speed Shore Corp., v. Denda,*
   605 F.2d 469 (9th Cir. 1979) ............................................................... 10
*Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) ................................ 11
*Sullivan v. Chase Inv. Servs., Inc.,*
   79 F.R.D. 246 (N.D. Cal. 1979) ........................................................... 16
*Villegas v. J.P. Morgan Chase & Co.,*
   No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........ 13
*Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977) ................. 20
*West v. Circle K Stores, Inc.,*
   No. 04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ................... 11, 17
*Wiener v. Dannon Co., Inc.,*
   255 F.R.D. 658 (C.D. Cal. 2009) .......................................................... 16
*Zepeda*, 2015 WL 6746913, at *4 ........................................................... 15
*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ............................................................. 19

**Statutes**
Business & Professions Code §§ 17200, *et seq.* ............................................. 6
Cal. Labor Code §§ 2698 Et Seq. ............................................................... 2
California Labor Code Private Attorneys General Act of 2004 ............................... 6
Labor Code §§ 1182.12, 1194, 1197 & 1198, et seq. ........................................ 5
Labor Code §§ 201 & 202, et seq. ............................................................. 6
Labor Code §§ 226 and 226.3 .................................................................. 5
Labor Code §§ 226.7 & 1198 et seq. .......................................................... 5
Labor Code §§ 226.7, 512(a) & 1198 et seq. ................................................. 5
Labor Code §§ 2698, *et seq.* .................................................................. 6
Labor Code §§ 510, 1194, 1197.1, and 1198 .................................................. 5

**Other Authorities**
*Newberg on Class Action* § 14:6 (4th ed. 2008) ....................................... 12, 21

**Rules**
Fed. R. Civ. P. 23(a)(4) ........................................................................ 18
Fed. R. Civ. P. 23(e)(2) ........................................................................ 11
Rule 23 of the Federal Rules of Civil Procedure ........................................ 1, 4
Rule 23(a)(1) ..................................................................................... 16
Rule 23(a)(2) ..................................................................................... 17
Rule 23(a)(3) ..................................................................................... 17
Rule 23(b)(3) ..................................................................................... 19

**Regulations**
Treas. Reg. § 31.3402(g)-1(a)(2) .............................................................. 8

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Debbie Ochinero on behalf of herself and all others similarly situated, the general public, and all aggrieved employees, seeks preliminary approval of this non-reversionary $485,000 collective and class action settlement ("Settlement") pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the Fair Labor Standards Act (FLSA).[1] The Settlement is the product of a significant exchange of data and a lengthy negotiation process that resulted in Plaintiff and Defendant (collectively "the Parties") accepting a proposal made by experienced California wage-hour mediator Michael Loeb, Esq.  The estimated Net Settlement Amount available for distribution to all class members will be $273,834, which is based upon the Total Settlement Amount minus (i) $18,000 named-Plaintiff service award and general release payment, (ii) up to $161,166 in attorneys' fees and $20,000.00 in out-of-pocket expenses, and (iii) an estimated amount of $12,000 in third party settlement administrator fees.   Settlement at ¶ P.  Defendant will separately pay the employer share of taxes on top of the Total Settlement Amount.  Settlement at ¶ XVI.

The Settlement is non-reversionary, meaning that all of the Net Settlement Amount will be paid to each and every class member who does not exclude themselves from the Settlement. Individual class member payments will be calculated by comparing the total number of weeks worked by the entire class with the weeks worked by each individual class member to determine each class member's pro rata share from May 31, 2018 up to the date this Court enters preliminary approval ("Class Period").  Settlement at ¶ X, XII.  Payments for class members who exclude themselves from the Settlement will re-distributed to participating class members.  Settlement at ¶ X, XII. The Settlement Administrator shall distribute the value of the uncashed checks, plus any interest that has accrued thereon, to the National Employment Law Project.  The Settlement Administrator shall void any tax documents issued to Settlement Class members who did not cash their checks

---

[1] A true and correct copy of the Parties' Settlement is attached as Exhibit B to the Declaration of Joshua D. Buck ("Buck Dec."), submitted contemporaneously herewith this Unopposed Motion for Preliminary Approval of Collective and Class Action Settlement ("Unopposed Motion for Preliminary Approval").

1  within 180 days of issuance. Settlement at ¶ XII.  Ultimately, Defendant will not retain any funds

2  from the Settlement and no funds will revert to Defendant.

3      For all the reasons set forth below, the Parties submit that the Settlement should be

4  preliminarily adjudged to be a fair, adequate, and reasonable resolution of the litigation.  Counsel for

5  Plaintiff and Defendant are experienced wage-hour class action litigators in the state of California

6  and nationwide. The Parties reached a settlement in this action following the exchange of thousands

7  of pages of documents.   Ultimately, the Parties were able to adequately evaluate the total potential

8  exposure involved in the litigation and assess the relative strengths and weaknesses of continued

9  certification of the classes and the underlying merits of the claims and defenses asserted in the

10  action.  Accordingly, the Settlement should be preliminarily approved, the Rule 23 class should be

11  certified for settlement purposes, a final approval hearing should be set, and the Notice and

12  distribution plan should be approved for mailing.

13  **II.    LITIGATION HISTORY**

14      Plaintiff first filed her requisite Private Attorney General Act (PAGA) Notice with the

15  California Labor and Workforce Development Agency (LWDA) on May 31, 2019.  Plaintiff

16  subsequently filed the class and collective action complaint against Defendant in the United States

17  District Court, Central District of California, on June 7, 2019.  (Dkt No. 1.)  Plaintiff's complaint

18  asserts seven (7) causes of action for violations of federal and California State wage and hour laws,

19  including: (1) Failure to Pay Overtime Compensation; (2) Failure to Provide Minimum Wages; (3)

20  Failure to Provide Rest Breaks; (4) Failure to Provide Accurate Wage Statements; (5) Waiting Time

21  Penalties; (6) Unfair Business Practices; and (7) Violations of the California Labor Code Private

22  Attorneys General Act, Cal. Labor Code §§ 2698 Et Seq.  Plaintiff brought her FLSA claims on

23  behalf of the following FLSA Classes:

24      **FLSA Collective:** All individuals who currently work, or have worked,
25      for the Defendant as a Mortgage Loan Officer, Loan Officer, and/or other
        inside commissioned employees (collectively "MLOs"), or any other
26      similarly-titled, hourly-paid position, at any time within the preceding 3-
        years from the date of filing the complaint.
27

28

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT

(*Id.* at ¶ 31.)  Plaintiff also brought her California state law wage-hour claims on behalf of the following California Class and Subclasses:

> **California Class:** All persons who were employed by Defendant within the State of California as a Mortgage Loan Officer, Loan Officer, and/or other inside commissioned employees (collectively "MLOs") at any time within the preceding 4-years from the date of filing the complaint

> **Rest Period Subclass:** All members of the Class who were employed at any time from 3 years from the filing of the complaint through the date of entry of judgment.

> **Itemized Wage Statement Subclass:** All members of the Class who were employed at any time from 1 year from the filing of the complaint through the date of entry of judgment.

> **Waiting Time Penalty Subclass:** All members of the Class who are former employees and who were employed at any time from 3 years from the filing of the complaint through the date of entry of judgment.

(*Id.* at ¶¶ 42-43).  The factual allegations supporting Plaintiff's claims were essentially based on her allegations that Defendant's compensation scheme for MLOs failed to adequately compensate MLOs for their rest breaks under California law and failed to correctly calculate all the overtime and minimum hours worked as required by both federal and California state law.

On September 18, 2019, Plaintiff filed a Motion for Default Judgment against Defendant. (Dkt. No. 31). Following this motion, Defendant and Plaintiff filed a joint stipulation to set aside default as to Defendant. (Dkt. No. 25). Following Judge Selna's Order setting aside and vacating the default, Defendant filed an answer to Plaintiff's complaint. (Dkt. No. 36, 39).

Following Defendant's answer, on November 26, 2019, Plaintiff filed a joint stipulation to stay the case pending mediation. (Dkt. No. 42). Judge Selna ordered the case stayed pending the Parties' mediation on March 12, 2019. (Dkt. No. 43).

## III.  SETTLEMENT NEGOTIATION BACKGROUND

Class Counsel conducted informal discovery and investigation that yielded information and documentation concerning the claims set forth in the Litigation, such as Defendant's policies and procedures regarding overtime, the payment of wages, the provision of meal and rest periods,

issuance of wage statements, and the payment (or alleged non-payment) of all wages at separation,
as well as information regarding the number of putative class members, workweeks, and the wage
rates in effect. Settlement at ¶ B. The Named Plaintiff and Class Counsel engaged in good faith,
arms-length negotiations with the Defendant concerning possible settlement of the claims asserted in
the Litigation Settlement at ¶ C. On March 12, 2020, the Parties participated in a mediation before
mediator Michael Loeb, Esq that ultimately resulted in a tentative settlement of the Litigation,
memorialized in a Memorandum of Understanding, subject to certain contingencies[2] and the
approval of the Court, along with finalization of a formal Stipulation for Settlement. *Id.* The Parties
have since engaged in extensive negotiations about the terms and conditions of the Settlement
Agreement. *Id.* The Parties have now entered into a formalized Settlement Agreement for
submission to the Court for approval. *Id.*

## IV.    SUMMARY OF KEY SETTLEMENT TERMS

### A.    The Settlement Class

Under the Settlement, the Parties seek to certify the following class for settlement purposes
under Rule 23 of the Federal Rules of Civil Procedure and the FLSA ("Settlement Class"):

> All current and former employees of Defendant who worked for
> Defendant as loan officers within the State of California at any time within
> the Class Period.

Settlement at ¶ X.  The Class Period as used in the Settlement Class definition means the period
from May 31, 2018 to the date that the Court signs the Preliminary Approval Order. Settlement at ¶
D.[3]

---

[2] Those contingencies primarily revolved around Defendant, post-mediation, demonstrating the
existence of valid and enforceable arbitration agreements for the majority of the class.  Although
Defendant could not meet the agreed-upon threshold number of valid agreements necessary to
consummate the settlement, the Parties' subsequently negotiated for a higher settlement amount to
account for this deficiency.

[3] The Class Period covered by the Settlement is notably shorter than the total potential class
period covered by Plaintiff's federal and state law claims.  The Named-Plaintiff has agreed to
resolve all of her claims asserted in this litigation and has thus executed a general release of claims.
Putative Class Members who fall outside the Class Period covered by this Settlement, however, may
still be able to assert claims for unpaid wages and penalties that are not covered by the Settlement.

4.

1

    **B.**    **The Settlement Amount**

2

        The Settlement provides a Total Settlement Amount of four hundred eighty-five thousand

3

dollars and zero cents ($485,000.00). Settlement at ¶ W.  The estimated Net Settlement Amount

4

available for distribution to all class members will be $266,333.33, which is based upon the Total

5

Settlement Amount minus (i) $18,000 named-Plaintiff service award and general release payment,

6

(ii) up to $161,666 in attorneys' fees and $20,000.00 in out-of-pocket expenses, and (iii) an

7

estimated amount of $12,000 in third party settlement administrator fees. Settlement at ¶ VIII.

8

    **C.**    **Release of Claims**

9

        The release of claims only covers the causes of action contained in Plaintiff's Complaint, or

10

causes of action that could have been asserted that are based on the factual allegations asserted in the

11

Complaint, for the Settlement Class Period.  The release of claims specifically states as follows:

12

        Upon the Date of Final Approval, Named Plaintiff and all members of the

13

Settlement Class, except those that make a valid and timely request to be excluded from the Settlement Class and Settlement, waive, release,

14

discharge, and promise never to assert in any forum the following claims against Defendant, its past and present officers, directors, shareholders,

15

unit holders, managers, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, and its respective

16

successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys from all claims, demands, rights, liabilities and causes of action

17

that were pled in any of the complaints in the Litigation, or which could

18

have been pled in any of the complaints in the Litigation based on the factual allegations therein, that arose during the Class Period with respect

19

to the following claims: (a) failure to pay all minimum wages and regular wages owed (including without limitation Labor Code §§ 1182.12, 1194,

20

1197 & 1198, et seq.); (b) failure to pay all overtime and double-time wages owed (including without limitation Labor Code §§ 510, 1194,

21

1197.1, and 1198); (c) failure to provide meal periods, or premium pay for non-compliant meal periods (including without limitation Labor Code §§

22

226.7, 512(a) & 1198 et seq.); (d) failure to authorize and permit rest periods, or provide premium pay for non-complaint rest periods (including

23

without limitation Labor Code §§ 226.7 & 1198 et seq.); (e) failure to

24

provide accurate, itemized wage statements (including without limitation Labor Code §§ 226 and 226.3); (f) failure to timely pay wages upon

25

separation of employment (including without limitation Labor Code §§

26

27

Accordingly, these putative class members are in no way prejudiced by the Parties' Settlement that only covers a one-year look back period from the filing of Plaintiff's notice with the LWDA

28

pursuant to PAGA.

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT

201 & 202, et seq.); (g) all claims for unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above (including without limitation Business & Professions Code §§ 17200, *et seq.*); (h) all claims under the Fair Labor Standards Act (FLSA) that could have been premised on the facts, claims, causes of action or legal theories described above; and (i) all claims under California Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698, *et seq.* (hereinafter "PAGA") that could have been premised on the facts, claims, causes of action or legal theories described in the Litigation and above.

Settlement at ¶ VII. The released parties are Defendant Ladera Lending, Inc., and each of its respective subsidiaries, affiliates, predecessors or successors in interest, officers, directors, shareholders, employees, attorneys, agents, assigns, insurers, and re-insurers. *Id.*

## D. Form and Procedure of Settlement Notice

The Named Plaintiff and Defendant, through their respective attorneys, have jointly prepared a Notice of Class Action and Proposed Settlement (the "Notice") that will be provided to the members of the Settlement Class through the following procedure[4]:

As soon as practicable following Preliminary Approval of the Settlement, but no later than thirty (30) days after the Court's Preliminary Approval order, Defendant will provide to the Settlement Administrator the following information about each Settlement Class member: (1) name; (2) last known home address; (3) number of workweeks during the Class Period based on dates of employment; and (4) social security number (collectively the "Class List"). Settlement at ¶ IX.

The Settlement Administrator shall run all the addresses provided through the United States Postal Service NCOA database (which provides updated addresses for any individual who has moved in the previous four years who has notified the U.S. Postal Service of a forwarding address) to obtain current address information. *Id.* The Settlement Administrator shall mail the Notice to the members of the Settlement Class via first-class regular U.S. Mail using the most current mailing address information available within fourteen (14) calendar days after the receipt of the Class List from the Defendant. *Id.*

---

[4] A true and correct copy of the proposed Notice is attached as Exhibit C to the Declaration of Joshua D. Buck.

6.

1   The Notice shall provide the members of the Settlement Class with a sixty (60) day notice of

2   all applicable dates and deadlines. *Id.* The Notice will also include information regarding the nature

3   of the Litigation; a summary of the terms of the Settlement; the definition of the Settlement Class

4   members; a statement that the Court has preliminarily approved the Settlement; the procedure and

5   time period for objecting to the Settlement; the date and location of the Final Approval hearing;

6   information regarding the opt-out procedure; Defendant's calculation of the number of workweeks

7   during the Class Period; and the estimated individual settlement payment the Class member will

8   receive if they do not validly opt-out of the Settlement. *Id.*

9   If a Notice is returned from the initial notice mailing, the Settlement Administrator will

10  submit the applicable and available information, including name, social security number, and

11  original mailing address, to a company that specializes in address skip tracing in an attempt to locate

12  a more current address. *Id.* If the Settlement Administrator is successful in locating a new address, it

13  will re-mail the Notice to the Settlement Class member. *Id.* Further, any Notices returned with a

14  forwarding address to the Settlement Administrator, as non-deliverable before the deadline date,

15  shall be sent to the forwarding address affixed thereto. *Id.* If the Settlement Administrator is

16  unsuccessful in locating a new address, it will re-mail the Notice to the original address it had for the

17  Settlement Class member. *Id.*

18  No later than twenty-five (25) days prior to the Final Approval Hearing, the Settlement

19  Administrator shall provide Counsel for Defendant and Class Counsel with a declaration attesting to

20  the completion of the Notice process, including the number of attempts to obtain valid mailing

21  addresses for and re-sending of any returned Notices, as well as the number of valid opt-outs and

22  deficiencies which the Settlement Administrator received. *Id.*

23  **E.      Settlement Allocation Plan**

24  The amount paid to each participating Settlement Class member shall be net of the

25  participating Settlement Class member's share of all federal, state and local taxes and required

26  withholdings, including without limitation, FICA, Medicare tax, FUTA, and state unemployment

27  taxes. Settlement at ¶ XVI. The Employer Taxes for Defendant's share of taxes for the wage portions

28  of the Settlement Payment shall be paid by Defendant separately and in addition to Defendant's

7.

payment of the Settlement Amount. *Id.* The Parties agree that all employment taxes and other legally required withholdings will be withheld from payments to the members of the Settlement Class and Named Plaintiff based on the Parties stipulated allocation of the Net Settlement Amount as provided for in this Section. *Id.* The amount of federal income tax withholding will be based upon a flat withholding rate for supplemental wage payments in accordance with Treas. Reg. § 31.3402(g)-1(a)(2) as amended or supplemented. *Id.*

Income tax withholding will be made pursuant to applicable state and/or local withholding codes or regulations. *Id.* For withholding tax characterization purposes and payment of taxes, the Net Settlement Amount shall be deemed and is allocated as follows ("Net Settlement Allocation"): (1) 1/3% as wages; (2) 1/3% as penalties; and (3) 1/3% as interest. *Id.*

**F.      Settlement Administration**

The Parties have selected Simpluris, Inc., as the Settlement Administrator in this case. In Class Counsel's experience, Simpluris is a leader in wage-hour class action settlement administration in California and is cost efficient. Settlement at ¶ VII.

Pursuant to the Settlement, Simpluris will be required to format and print the Notice for distribution to all class members, mail the Notices via first class mail, perform skip tracing and take all necessary steps to make sure class members receive the Notice. *Id.* Class members will have 45 days from the date of the mailing to postmark any opt-out or objection. Settlement at ¶ XII. If an opt-out is incomplete, Simpluris will give the individual one chance to cure any defect. Any incomplete and uncured opt-out will be null and void.

Simpluris will also be the arbiter of any dispute with respect to the settlement payments made to class members. To the extent a class member disputes any of the information listed on his or her Notice (for example, the calculation of total hours worked), the Class Member may produce evidence to Simpluris showing such information the class member contends should be reflected in the Notice. Defendant's records are presumed to be correct in the absence of contrary documentation submitted by the class member. However, and Simpluris' decision on such disputes matters will be final. Settlement at ¶ IX.

G.     **Service Award/General Release Payment to Plaintiff**

Pursuant to the Settlement, Plaintiff Karen Martinez has agreed to waive and release all her claims (not just those claims arising out of the facts asserted in the complaint) in exchange for her receipt of a $18,000 service award.  Settlement at ¶ VII. The service award should be preliminarily adjudged to be fair, adequate, and reasonable because of the invaluable time consuming work that Plaintiff performed in advance of the interest of the class and the risks that she took in coming forward and filing this action. Plaintiff has been actively involved in this action since searching out and finding an attorney to remedy the alleged violations one-and-a-half years ago. She provided Class Counsel will numerous employment documents. Plaintiff also provided Class Counsel with numerous witnesses, many of whom signed declarations in support of the collective and class claims, and was active in communicating with those witnesses. In short, Plaintiff has been an active participant in this litigation and has invested many hours of her own time in assisting Class Counsel and other putative class members in this case.

In addition to her active participation in this case, it cannot be overlooked that Plaintiff took a significant risk in filing this action and making her allegations public. Having her name on an employment class action case could have the effect of adversely affecting her employment prospects, both current and future.  This risk is real and should be accounted for in determining the appropriateness of the service award.

H.     **Class Counsel Fees and Costs**

Under the Settlement agreement, Class Counsel shall not seek or receive an amount in excess of $161,666.00, which represents $33^{1}/_{3}$% of the Settlement Amount for all past and future attorneys' fees necessary to prosecute, settle and administer the Litigation and this Settlement. Settlement at ¶ XIV. Class Counsel will file their motion for attorneys' fees and costs no later than 14 days following the Court's order granting preliminary approval of the settlement.  Class Counsel will post the motion on the settlement website for class members to view.  Although Class Counsel will separately file a motion for attorneys' fees and costs pursuant to the settlement, Class Counsel briefly requests that the attorneys' fees sought and actual litigation costs incurred to date be preliminarily approved.

9.

Class Counsel requests that the Court preliminarily approve their request for attorneys' fees of $161,666.00, which represents 33$^1$/$_3$% of the Settlement Amount for all past and future attorneys' fees necessary to prosecute, settle and administer the Litigation and this Settlement. Settlement at ¶ XIV. Class Counsel's total lodestar in the case is equivalent to $184,995 and Class Counsel has expended over 247.70 hours. Class Counsel's requested fee of $161,666 represents a negative multiplier of .87 on Class Counsel's lodestar. In other words, Class Counsel's requested fee under the Settlement is less than what Class Counsel could have received if they had been paid an hourly basis. *See* Buck Dec. at ¶¶ 9-12. Accordingly, Class Counsel's fees should be preliminarily adjudged to be fair, adequate, and reasonable.

Class counsel also seeks recovery of the actual litigation costs that have been expended in prosecuting this action, which under the agreement will not exceed $20,000.00. Settlement at ¶ XIV. Class Counsel has had to incur necessary costs in the form of fees for filing, mediation, and experts. To date, Class Counsel has incurred $16,825.06. *See* Buck Dec. at ¶ 13. Class Counsel expects to incur additional expenses up through final approval in the amount. These costs should be preliminary adjudged to be fair, adequate, and reasonable.

In conclusion, Class Counsel's fees and costs are prominently displayed on the Notice so that Class Members can opine as to whether they believe the fees should be finally adjudged to be fair, adequate and reasonable.

## I. PAGA Notice

On the same date this Agreement is filed with the court, Plaintiff will file and serve a notice proposed settlement of PAGA case online at https://dir.tfaforms.net/209.

## V. ARGUMENT

### A. The Proposed Settlement Should be Preliminarily Approved

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit

expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. Fed. R. Civ. P. 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619 (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). To determine whether a settlement agreement is fair, reasonable, and adequate, courts must consider various factors, including (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003). This is by no means an exhaustive list of relevant considerations." *Officers for* Justice, 688 F.2d at 625. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.*

During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing."

11.

*Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

### 1. The Settlement is the Result of Non-Collusive, Informed, Arm's Length Negotiations

The first factor of the *Bellinghausen* test for preliminary approval of a class action settlement and notice to the class is met here because the Settlement Agreement is the product of serious, informed, noncollusive negotiations. *Bellinghausen*, 303 F.R.D. at 619. In *Bellinghausen,* the court noted that "the first factor concerns "the means by which the parties arrived at settlement."" *Id.* at 620 (citing *Harris v. vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). The court explained, "[f]or the parties to have brokered a fair settlement, they must have been able to reasonably assess its strengths and value." *Id.* (internal citation omitted.) The requirement that the proposed Settlement be conducted by arm's-length, and non-collusive negotiations protects the proposed Class Members. Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

The proposed Settlement in this case is presumptively fair because it was reached through years of arms' length contentious negotiations utilizing an experienced mediator and there is nothing to suggest that there was any collusion between the parties. In fact, it was reached following one full day mediation and several telephonic negotiation sessions between the Parties over several months. The fact that an experienced mediator was involved in the settlement strongly evidences the non-

12.

1  collusiveness of the settlement.  *See Harris,* 2011 WL 1627973, at *8 (noting that the parties' use of

2  a mediator "further suggests that the parties reached the settlement in a procedurally sound manner

3  that was not the result of collusion or bad faith by the parties or counsel."); *Adams v. Inter-Con*

4  *Security Sys., Inc.,* No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007); *In re*

5  *Austrian and German Holocaust Litig.,* 80 F. Supp. 2d 165, 173-74 (S.D.N.Y. 2000).

6         The *Bellinghausen* court did point out that "the use of a neutral mediator is not on its own

7  dispositive of whether the end product is fair, adequate, and reasonable settlement agreement."

8  *Bellinghausen,* 303 F.R.D. at 620 (citing *Bluetooth,* 654 F.3d at 948). The court looked to the facts

9  that "the parties had engaged in both formal and informal discovery prior to deciding to engage in

10 private mediation." *Id.* As discussed above, the Parties conducted both formal and informal

11 discovery.   Defendant provided thousands of pages of documents in response to Plaintiff's

12 discovery requests and, most importantly, provided data (payroll, punch)) prior to the Parties'

13 mediation efforts.  In sum, the Parties reached this Settlement through arm's-length bargaining, after

14 sufficient investigation and discovery and intensive arms-length negotiating overseen by an

15 experienced and respected mediator with an expertise in employment litigation.

16                    **2.      The Settlement Does Not Suffer from Any Obvious Deficiencies**

17        This settlement is the product of hard fought negotiations that was driven by the data at issue

18 in this case.  It is a total payout, non-reversionary Settlement. Accordingly, there are no obvious

19 deficiencies, inadequacies, or "red flags."

20                    **3.      The Settlement Does Not Provide Preferential Treatment for Segments of**
                             **the Class or the Class Representatives**
21

22        The third factor of the *Bellinghausen* test is a requirement that the "[c]ourt examine[]

23 whether the Settlement provides preferential treatment to any class member." *Bellinghausen,* 303

24 F.R.D. at 622 (citing *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA (EMC), 2012

25 WL 5878390 at * 7 (N.D. Cal. Nov. 21, 2012). The Settlement Agreement here does not, and instead

26 provides a reasonable and fair distribution mechanism for the named Plaintiff and putative Class

27 Members.

28

---

13.

1
2

          **a.**     **Eligible Class Members Will Recover Their Fair Share of the Settlement Based Upon Their Weeks Worked During the Class Period**

3

     A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate"

4

standard that applies to approval of class settlements.  *In re: Cathode Ray Tube (CRT) Antitrust*

5

*Litig.*, No. 1917, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (on appeal on other grounds)

6

(citing *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)); *In re Zynga*

7

*Inc. Secs. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (stating same).  A plan of

8

distribution that compensates class members based on the type and extent of their injuries is

9

generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL

10

7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a

11

pro rata share' to the class members based on the extent of their injuries.") (Internal citation

12

omitted.)  Here, all Class Members will receive a proportionate share of the Settlement fund based

13

upon the total number of weeks that they worked for Defendant.  This is a fair and adequate

14

distribution of potential settlement funds based plaintiff's rest break and unpaid wage claims.

15
16
17

          **b.**     **The Service Award for Class Representative Deborah Ochinero Reflects the Work She Undertook on Behalf of the Class and is in Consideration for her General Release of all Claims against Defendant**

18

     "[I]ncentive awards that are intended to compensate class representatives for work

19

undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental*

20

*Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  The Settlement does provide a $25,000 service

21

payment to Plaintiff Ochinero, which is not excessive. "Incentive awards [as opposed to agreements]

22

are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 958 (9th Cir.

23

2009). This $25,000 award is in line with what is generally awarded in class action settlements in

24

this District.  *See, e.g., Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995)

25

(approving $50,000 participation award to one named plaintiff for 10 years of active litigation );

26

*Glass v. UBS Financial Services, Inc., 2007 WL 221862,* at *17 (N.D. Cal. Jan. 26, 2007) (approving

27

$25,000 enhancement to each of four named plaintiffs for seven months of litigation.).

28

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

Here, as stated above, Mrs. Ochinero has been an active participant in the litigation and has expended numerous hours on behalf of the Class.  Her dedication to the Class is evidenced by her intense involvement in the case and her selfless desire to always look out for the interest of the Class above her own.  Her involvement has not been without risk, however.  Her name has been and will be publicly associated with this lawsuit, for better or for worse. She took a great risk on behalf of herself and the Class to come forward with this lawsuit.  She has also agreed to a general release all claims, both known and unknown, against Defendant. Accordingly, the service award should thus be preliminary adjudged to be fair, adequate, and reasonable.

### 4.    The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses

To grant preliminary approval, this Court must decide that the Settlement Agreement falls within the approved range for preliminary approval.  *Zepeda*, 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079.  To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080.  In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon,* 150 F.3d at 1026.

Here, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position.  From Plaintiff's perspective, the Total Settlement Amount represents at 59% recovery of the total exposure that Defendant faced with respect to Plaintiff's strongest claim that Defendant's compensation plan failed to adequately compensate loan officers for their daily rest breaks.  Plaintiff's expert on damages calculated the exposure of Plaintiff's rest break violations, together with other associated penalties, to be approximately 828,790.53 for the Class Period of May 31, 2018 to the date of mediation in March 2020.  The exposure calculation was

15.

based upon the employment data provided to Plaintiff and analyzed by Plaintiff's data expert prior to the mediation with Mediator Loeb.

Plaintiff agreed to resolve her claims on her behalf and on behalf of the class at an estimated 59% recovery of the total potential for the following principal reasons. First, as with all settlements, a recovery at 59% the total potential recovery represents a relatively quick and certain payout for all members of the Class. Second, resolving the action as a total non-reversionary payout to all members of the Class takes away any risk that the action may not ultimately proceed to trial on a class-wide basis. By resolving the case on a class-wide basis, all class members will be receiving funds whereas there is significant risk that the amount paid to absent class members would be zero. This concern was particularly poignant here because of the existence of arbitration agreements with class action waivers. Third, the case was a highly disputed as to whether Defendant's compensation plan violated California law with respect to rest breaks and unpaid wages.

In short, the class, liability, and damage issues in this case were all hotly contested. The Parties reached their Settlement following the exchange of numerous position statements, informal discovery, and with the assistance of Mediator Michael Loeb. For these reasons, the Settlement should be preliminarily adjudged to be a fair, adequate, and reasonable resolution of the action.

**B.    The Proposed Settlement Class Satisfies Rule 23 and Should be Certified**

**1.    Rule 23(a)(1): Numerosity Is Met**

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." The numerosity requirement is met when it would be difficult or inconvenient to join all members of the class. *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 664 (C.D. Cal. 2009). Although there is no numerical requirement, a class of one thousand members "clearly satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.,* 79 F.R.D. 246, 257 (N.D. Cal. 1979).

Here, the FLSA and California Classes consists of approximately 112 employees of Defendant. Since a class of forty is sufficient to satisfy the numerosity requirement, surely the Class Members in this case have satisfied the numerosity requirement. *Int'l Molders' & Allied Workers' Local 164 v. Nelson,* 102 F.R.D. 457, 461 (N.D. Cal. 1983).

2.      **Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class**

Rule 23(a)(2) requires that "there are questions or law of fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "[I]t is not necessary that all questions of law and fact be common." *West,* 2006 WL 1652598, at *3 (citing *Hanlon,* 150 F.3d at 1019). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019.

The Court has already held that there are enough common questions of fact and law to conditionally certify the FLSA Classes. Common questions of law and fact exist among Class Members in this case. If there is at least one issue whose resolution will affect all or a significant number of a class' members, then commonality exists. *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997). Some of the common questions of fact and law that affect the Settlement Class include whether Defendant's MLO compensation scheme adequately compensated MLOs for their rest breaks and all their hours worked. For all these reasons, the commonality element is satisfied.

3.      **Rule 23(a)(3): Named-Plaintiff Ochinero's Claims Are Typical of the Claims of the Class**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." For typicality to exist, class representative plaintiffs must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical." *Hanlon,* 150 F.3d at 1020. The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

Here, all class members, including Plaintiff Ochinero, worked for Defendant and were employed between May 31, 2018 and the date the Court enters preliminary approval. Plaintiff and all class members are covered by Plaintiff's allegation that they were covered by the same MLO compensation plan that, as Plaintiff alleges, failed to adequately compensate MLOs for their rest

17.

1    breaks and all the hours they worked.  Accordingly, Plaintiff Ochinero and the members of the class

2    were subject to the same alleged improper pay policies and practices.

3
### 4.    Rule 23(a)(4): Plaintiff Ochinero and Class Counsel Will Fairly and Adequately Represent the Interests of the Class
4

5    Finally, Rule 23(a) requires that the "representative parties will fairly and adequately protect

6    the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  The adequacy factor contains two

7    requirements: "(1) that the representative's party's attorney be qualified, experienced and generally

8    be able to conduct the litigation; and (2) that the suit is not collusive and plaintiff's interests are not

9    antagonistic to those of the remainder of the class."  *In re United Energy Corp. Solar Power*

10   *Modules Tax Shelter Investments Securities Litigation,* 122 F.R.D. 251, 257 (N.D. Cal. 1988).

11   Both of the adequacy factors are satisfied in this case.  Plaintiff has retained counsel who are

12   extremely experienced in employment wage-hour class action cases.  *See* Buck Dec. at ¶¶ 2-3.  Class

13   Counsel has successfully pursued this litigation for the last two years by, on the one hand, seeking to

14   engage Defendant in potential settlement discussion and, on the hand, aggressively litigating the

15   action by (i) seeking to invalid individual settlement agreements, (ii) having the case certified, and

16   (iii) pursuing developing a comprehensive litigation strategy. The result obtained—a mid-six figure

17   non-reversionary total payout Settlement—is a good result given the hurdles presented.

18    Further, the settlement is not collusive and does not contain any "red flags" of self-interest.

19   *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  Plaintiff's interests are not

20   antagonistic or conflicting with the interests of other Class Members.  Plaintiff suffered the same

21   alleged injury as other Class Members.  *See Amchem,* 521 U.S. 625-26 ("[A] class representative

22   must be part of the class and 'possess the same interest and will suffer the same injury' as the class

23   members.").  Plaintiff has dedicated her time and energy towards obtaining relief for the Class.

24   Accordingly, Plaintiff Ochinero is an adequate class representative.

25
### 5.    Rule 23(b)(3)'s Requirements Are Met
26
#### a.    Common Questions of Fact or Law Predominate
27   Rule 23(b)(3) requires that "questions of law or fact predominate over any questions

28   affecting only individual members."  "The Rule 23(b)(3) predominance inquiry tests whether

18.

proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022. As briefly discussed with respect to the commonality requirement, questions of law and fact predominate over questions affecting only individual Class Members.

###### b.   The Class Action Mechanism is Superior to Any Other Method of Adjudication

Finally, Rule 23(b)(3) also provides that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) the class members' interests in controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190-92 (9th Cir. 2001).

Prosecuting this action as a class action is a superior method to all other available methods of adjudication. If not for this Settlement, a large majority of Settlement Class Members will never have their claims determined on the merits or recover any funds. Finally, since the parties wish to certify the case for settlement purposes only, the Court need not determine whether there will be "intractable management problems." *Amchem*, 521 U.S. at 620. In light of these findings, a class action is a superior method for adjudicating this controversy.

###### C.   The Court Should Confirm Thierman Buck, LLP, and Stephan Zouras, LLP, As Class Counsel And The Proposed Attorneys Fees And Costs Should Be Approved

The allocation of total settlement funds between class members and the attorneys is also fair, in that the Settlement provides for Plaintiffs' counsel to seek no more than 1/3 of the Total

19.

1   Settlement Amount in fees.  Plaintiff's attorney fee agreement with Class Counsel is a contingency

2   fee agreement.  Class Counsel has provided all legal services up to this point without cost and has

3   expended tens of thousands of dollars in expert fees and analysis, among other things Class Counsel

4   will file their Motion for Approval of Class Counsel Fees and Costs no later than 21 days following

5   preliminary approval of the Settlement.

6        The requested fees are fair compensation for undertaking complex, risky, expensive, and

7   time-consuming litigation solely on a contingency basis.  Further, the fee request is in line with other

8   attorneys' fees awards for similar actions, particularly given that the class members here will each be

9   entitled to receive a substantial payment, averaging over $2,100.00 (with approximately 1/3 of the

10  class set to receive over $4,000.00), without the need to submit a claim form.  Indeed, courts have

11  recognized that an appropriate method for awarding attorneys' fees in class action is to award a

12  percentage of the "common fund" created as a result of the settlement.  *Vincent v. Hughes Air West,*

13  *Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of the common fund/percentage approach is to

14  "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does

15  not bear the entire burden alone." *Id.*

16       Moreover, several courts have expressed frustration with the alternative "lodestar" approach

17  for deciding fee awards, which usually involves wading through voluminous and often

18  indecipherable time records.  Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel

19  wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

20              This court is compelled to ask, "Is this process necessary?"  Under
               a cost-benefit analysis, the answer would be a resounding, "No!"
21             Not only does the *Lindy Kerr-Johnson* analysis consume an undue
               amount of court time with little resulting advantage to anyone, but
22             in fact, it may be in the detriment of the class members.  They are
               forced to wait until the court has done a thorough, conscientious
23             analysis of the attorneys' fees petition.  Or, class members may
               suffer a further diminution of their fund when a special master is
24             retained and paid from the fund.  Most important, however, is the
               effect the process has on the litigation and the timing of settlement.
25             Where attorneys must depend on a lodestar approach, there is little
               incentive to arrive at an early settlement.
26

27

28

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT

1    Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests

2    of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by

3    providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial

4    resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely uses

5    the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g., In*

6    *re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys'

7    fees of 33 1/3% of settlement fund).

8    Class counsel's application for 1/3 of the Total Settlement Amount is within the range of

9    reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the

10   common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed.

11   2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989).

12   According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a

13   common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common

14   fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained

15   for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6.

16   Accordingly, the attorneys' fees sought in this case are fair and reasonable and should be preliminarily

17   approved.

18            **D.    Proposed Schedule for Final Approval and Dissemination of Notice**

19   Pursuant to the Settlement, the Parties proposed the following schedule:

| a. | Deadline for Class Counsel to file Motion for Final Approval of Settlement, Attorneys' Fees, Costs, and Enhancement Award | _____, 2021 [21 calendar days after Order granting Preliminary Approval] |
|---|---|---|
| b. | Deadline for Defendant to Submit Class Member Information to Settlement Administrator | _____, 2021 [45 calendar days after Order granting Preliminary Approval] |
| c. | Deadline for Settlement Administrator to Mail the Notice to Class Members | _____, 2021 [59 calendar days after Order granting Preliminary Approval] |
| d. | Deadline for Class Members to | _____, 2021 |

21.

| | | Postmark Requests for Exclusions | [45 calendar days after initial mailing of the Notice to Class Members] |
|---|---|---|---|
| | e. | Deadline for Receipt by Court and Counsel of any Objections to Settlement | _____, 2021 [45 calendar days after initial mailing of the Notice to Class Members] |
| | f. | Deadline for Settlement Administrator to Provide the Parties a Declaration of Due Diligence and Proof of Mailing | _____, 2021 [10 calendar days after response deadline] |
| | g. | Deadline to file Motion for Final Approval of Settlement | _____, 2021 [21 calendar days after response deadline] |
| | h. | Final Fairness Hearing and Final Approval | _____, 2021 |
| | i. | Deadline for Defendant to Fund Settlement Account maintained by Settlement Administrator | _____, 2021 [10 calendar days after Effective Date] |
| | j. | Deadline for Settlement Administrator to disburse the Total Settlement Amount to Settlement Class Members, Class Counsel, the LWDA, Plaintiff, and itself (if Settlement is Effective) | _____, 2021 [10 calendar days after Defendant Funds Settlement Account] |
| | k. | Deadline to file Post-Distribution Accounting | _____, 2021 [21 days after Disbursement] |
| | l. | Value of Uncashed Checks Transmitted by Settlement Administrator to *Cy Pres* Recipient | _____, 2022 [365 calendar days after Disbursement] |

## VI.    CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Parties' Settlement be preliminarily approved and seek and seek an Order from this Court for the following:

(1)    Preliminarily approving a proposed collective and class action settlement with Defendant Ladera Lending, Inc.;

22.

1      (2)     Preliminarily certifying the Classes for purposes of settlement;

2      (3)     Scheduling a hearing on the question of whether the proposed settlement

3              should be finally approved as fair, reasonable and adequate as to the class

4              members; and

5      (4)     Approving the manner and form of Notice and proposed distribution plan

6              to class members.

7    Dated: January 14, 2021

8                                              /s/Joshua D. Buck                          .
                                               JOSHUA BUCK
9                                              THIERMAN BUCK LLP

10                                             JAMES B. ZOURAS
                                               STEPHAN ZOURAS, LLP
11
                                               *Attorneys for Plaintiff, the general public, and
12                                             all others similarly situated*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT