Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com

James B. Zouras, Pro Hoc Vice
Ryan F. Stephan, Pro Hoc Vice
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312 233 1550
312 233 1560 *f*
Email: jzouras@stephanzouras.com
Email: rstephan@stephanzouras.com

*Attorneys for Plaintiff, the general public, and all others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| DEBORAH OCHINERO, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br>v.<br><br>LADERA LENDING, INC., and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.  8:19-cv-01136-JVS-ADS<br><br>**DECLARATION OF JOSHUA D. BUCK IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>DATE:      Feb. 22, 2021<br>TIME:      1:30 p.m.<br>JUDGE:    Hon. James V. Selna<br><br>COMPLAINT FILED:  June 21, 2019 |

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1

I, Joshua D. Buck, hereby declare and state as follows:

1.     The following declaration is based upon my own personal observation and knowledge, and if called upon to testify to the things contained herein, I could competently so testify.

2.     I am an attorney at law and partner with Thierman Buck, LLP and I am admitted to practice law in the states of California and Nevada, and the United States District Court District of Nevada, Northern District of California, Southern District of California, Central District of California, the Sixth Circuit Court of Appeals, the Ninth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and the United States Supreme Court.  Attached hereto as Exhibit A is a current CV which lists my qualifications and case experience.  I estimate that I have recovered approximately $50 million dollars in unpaid wages on behalf of employees during the last 11 years of my wage-hour class action practice.

3.     I, along with my co-counsel, James B. Zouras at Stephan Zouras, LLP, am the attorney of record for Plaintiff DEBORAH OCHINERO ("Plaintiff") in this action against Defendant LADERA LENDING, INC. ("Defendant" or "LADERA LENDING").  I, along with Jim Zouras, who is also highly-experienced in wage and hour litigation of this kind, have handled all aspects of this litigation from the initial client intake up to and including the negotiations of the Settlement Agreement.  Attached hereto as Exhibit B is a copy of the Settlement Agreement ("Settlement") and Exhibits.

4.     It is my opinion, and that of my co-counsel, that the Settlement represents a fair, adequate, and reasonable resolution of this wage-hour case.  The Total Settlement Amount of $485,000 represents an approximate 59% recovery of the total potential exposure on Plaintiff's strongest claim that Defendant's compensation scheme for Mortgage Loan Officers (MLOs) did not adequately compensate MLOs for their legally mandated rest breaks.  Plaintiff's expert on damages calculated the exposure of Plaintiff's rest break violations, together with other associated penalties, to be approximately $828,790.53 for the Class Period of May 31, 2018 to the date of mediation in March 2020.  Here, the Settlement represents a compromise between experienced

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

2

counsel for Plaintiff and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position.

5.      Plaintiff agreed to resolve her claims on her behalf and on behalf of the class at an estimated 59% recovery of the total potential for the following principal reasons.  First, as with all settlements, a recovery at 59% the total potential recovery represents a relatively quick and certain payout for all members of the Class.  Second, resolving the action as a total non-reversionary payout to all members of the Class takes away any risk that the action may not ultimately proceed to trial on a class-wide basis.  By resolving the case on a class-wide basis, all class members will be receiving funds without the need to submit a claim form, whereas there is significant risk that the amount paid to absent class members would be zero.  This was a real and present concern because one of the main areas of dispute between Plaintiff and Defendant was the existence of valid and enforceable arbitration agreements.  Ultimately, in Defendant's opinion, all of these factors negated class wide treatment of the issue and would undercut any potential liability.

6.      In short, the class, liability, and damage issues in this case were all contested by experienced counsel.  The Parties reached their Settlement following the exchange of numerous position statements, the production of arbitration agreements and class wide employment data, and only after Mediator Loeb submitted his own mediator's proposal to resolve the action.  For these reasons, the Settlement should be preliminarily adjudged to be a fair, adequate, and reasonable resolution of the action.

7.      It is my opinion that Ms. Ochinero's Service Award is well-deserved and should not be reduced, particularly because she has agreed to execute a general release of all her claims and potential claims against Defendant.  Named-Plaintiff and Class Representative Deborah Ochinero has taken a substantial risk in deciding to bring this action on her own behalf and a group of other similarly situated employees of Defendant. Since deciding to pursue this action, Ms. Ochinero has been in regular and constant contact with my co-counsel.  Her assistance was invaluable.  Ms. Ochinero has referred witnesses, called with updates, sent over documents, reviewed pleadings and other documents prepared by our offices, and otherwise actively

3

THERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

participated in her case.  She has always placed the interest of the Class ahead of her own self interest.  She has undoubtably invested a lot of personal time into seeing this case through to the end. Given the substantial risks she took in bringing this action, in addition to her dedicated and significant involvement throughout the litigation and her agreement to release all of her known and unknown claims against Defendant, it is my opinion that the Service Award should be approved.

8.     My co-counsel and I took this case on a contingency basis such that no attorneys' fees or expenses would inure to our benefit absent collection of a judgment or settlement. As such, Class Counsel has not been paid for any of their time or reimbursed for any expenses as of this date.

9.     Class Counsel invested significant attorney and professional staff time in this case from investigation through settlement. Class Counsel recorded their time in 6 or 15-minute increments.  Class Counsel's reasonable hours and lodestar are accurately reflected in Chart 1 below:

| Class Counsel's Hourly Rates and Experience | | | | | | |
|---|---|---|---|---|---|---|
| Name | Position | Bar Admission | Experience | Hours | Rate | Lodestar |
| **Joshua D. Buck** | Partner | 2008 | 11 years | 125.10 | $750 | $93,825 |
| **Leah L. Jones** | Associate | 2011 | 8 years | 2.6 | $450 | $1,170 |
| **James B. Zouras** | Partner | 1995 | 25 years | 109.2 | $750 | $81,900 |
| **Ryan F. Stephan** | Partner | 2000 | 20 years | 10.8 | $750 | $8,100 |

4

**BUCK DECLARATION**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Totals** | | | | **247.70** | | **184,995** |

10.     As the charts demonstrate, Class Counsel's total lodestar in the case is $184,995 and Class Counsel has expended over 247.70 hours.  Class Counsel's requested fee of $161,666 represents a negative multiplier of .87 on Class Counsel's lodestar.  In other words, Class Counsel's requested fee under the Settlement is less than what Class Counsel could have received if they had been paid an hourly basis.  Further, based on my experience in comparable wage and hour class and collective actions, Class Counsel can reasonably expect to expend additional and substantial hours of attorney and staff time during the settlement administration and distribution process, without any additional compensation, which even further reduces the reasonable multiplier on Class Counsel's time.

11.     Class Counsel have thoroughly reviewed the time entries recorded in this case and, exercising billing judgment, have removed any time for non-essential tasks or duplicative efforts. All of the time our law firms have submitted to the Court for compensation is (i) of the kind and character that Plaintiffs' counsel would normally bill to paying clients, (ii) time that counsel normally tracks and seeks to be paid for at the conclusion of successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the Class Members the best possible change for a favorable outcome.

12.     Class Counsel's requested hourly rate is reasonable and consistent with the rates of attorneys of comparable skill, reputation and experience performing work of comparable complexity in the Southern California area.  Furthermore, the requested hourly rate is consistent with the customary rates awarded to other attorneys with similar experience involving wage and hour litigation in this jurisdiction.  Based upon my litigation experience and billing judgment, I believe that the hours expended were reasonable.

13.     Class Counsel also seek a total reimbursement of up to $20,000 in expenses incurred and expected to be incurred during the course of the litigation.  To date, Class Counsel has incurred $16,825.06 in litigation expenses (Thierman Buck LLP has expended 9,053.13 and

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com  www.thiermanbuck.com

5

Stephan Zouras LLP has expended $7,771.93).   These expenses are reflected in the books and records of Class Counsel's firms and a true and correct itemization of those costs is attached hereto as Exhibit C. These expenses were reasonable expended in furtherance of the litigation.

I have read the forgoing declaration and declare under penalty of perjury under the laws of the United States of America and the States of California and Nevada that the foregoing is true and correct.

Executed on January 13, 2021, in Zephyr Cove, Nevada.

/s/*Joshua D. Buck*
Joshua D. Buck

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BUCK DECLARATION**

# EXHIBIT A

# EXHIBIT A



7287 Lakeside Drive
Reno, NV 89511
T: (775) 284-1500
F: (775) 703-5027
info@thiermanbuck.com
www.ThiermanBuck.com

**Joshua D. Buck**
**Partner, Thierman Buck LLP**

**Case Experience**

*In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387 (6th Cir. 2018) (reversing lower court decision and holding that Nevada wage-hour statutes do not follow federal Portal-to-Portal Act)

*Neville v. Eighth Judicial Dist. Court in & for Cty. of Clark,* 406 P.3d 499 (Nev. 2017) (successfully arguing in the Nevada Supreme Court that Nevada employees had a private right of action to sue for unpaid wages in court)

*Cesarz, et al. v. Wynn Las Vegas, LLC, et al.,* 816 F.3d 1080 (9th Cir. 2016) consolidated on appeal with *Oregon Rest. & Lodging Ass'n v. Perez* (successfully arguing on appeal that the 2011 Department of Labor tip pooling Regulations were valid and the district court erred in dismissing the action).

*Evans v. Wal–Mart Stores, Inc.*, No. 14-16566, 2016 WL 4269904, at *1 (9th Cir. Aug. 15, 2016) (reversing lower court decision and holding that waiting time penalties were recoverable for overtime pay violations)

*Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. Nev. Apr. 12, 2013) (holding that plaintiffs could bring hybrid FLSA collective actions and Rule 23 class action in the same action), rev'd on other grounds by *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 190 L. Ed. 2d 410 (2014) (wherein the Supreme Court held that the time spent undergoing mandatory anti-theft screenings at the end of the workday was a non-compensable postliminary activity pursuant to the Portal to Portal Act)

*Saldana, et al. v. SMX, LLC*, Master File No. 14-MC-2504 (W.D. Ky.) ($3,773,002.50 class action settlement on behalf of persons who worked at Amazon.com fulfillment warehouses in California for the time spent going through the anti-theft security screening at the beginning of the meal period and at the end of the shift)

*Robert Mina, et al. v. Amazon.com, Inc., et al.*, Case No 15-2-23879-5-SEA (King County, Wash.) ($2.5 million settlement on behalf of Amazon fulfillment warehouse workers for being required to undergo security screenings before their lunch breaks and at the end of the shift)

*Mesa Zeleke v. Ike Gaming, Inc., et al.*, Case No. A-18-769220-C (Clark County, Nevada, District Court) ($700,000 class settlement for Nevada minimum wage violations)

*Mustafa Yousif, et al. v. The Venetian Resort, LLC, et al.*, Case No. 2:16-cv-02941-RFB-NJK

(D. Nev.) ($1.225 million class settlement for Fair Credit Reporting Act (FCRA) violations)

*Monique Woods v. American Homes 4 Rent, LP,* Case No. A-18-777456-C (Clark County, Nevada, District Court) ($500,000 class settlement on behalf of call center employees for off the clock work and improperly overtime rate calculations)

*London Aaron v. Wenevada, LLC*, Case No. A-18-777457-C (Clark County, Nevada, District Court) ($600,000 class settlement for shift jamming and failure to pay daily overtime)

*Anthony Hernandez v. PJ Las Vegas, LLC, et al.*, Case No. A-17-762477-C (Clark County, Nevada, District Court) ($600,000 class settlement for shift jamming and failure to pay daily overtime)

*Christy McSwiggin, et al. v. Omni Limousine*, Case No. 2:14-cv-02172-JCM-NJK (D. Nev.) ($200,000 settlement on behalf of 15 opt-in plaintiffs for unpaid minimum and overtime wages)

*Robert Greene, et al. v. Jacob Transportation Services, LLC, et al.*, Case No. 2:09-cv-00466-GMN-CWH (D. Nev.) ($1.4 class settlement on behalf of limo drivers who were denied their minimum and overtime wages)

*Emil Botezatu v. Las Vegas Limousines, LLC*, Case No. 2:16-cv-00397-RFB-PAL (D. Nev.) ($718,416.10 class settlement on behalf of limousine drivers where were not compensated weekly overtime)

*Woodrow Tompkins, et al. v. Farmers Group Inc., et al.*, Case No. 14-cv-03737-JFL (E.D. Pa.) ($775,000 class settlement on behalf of insurance adjusters for pre and post shift work)

*Jeremy Ortiz, et al. v. American Casino & Entertainment Properties, LLC*, Case No. A-17-756093-C (Clark County, Nevada, District Court) ($1.075 million class settlement for unlawful rounding of employee hours)

*Steven James v. WG-Harmon, LLC, et al.*, Case No. A-17-761091-C (Clark County, Nevada, District Court) ($900,000 class settlement for unlawful rounding of employee hours)

*Anthony Windom, et al. v. K-Kel, Inc.*, Case No. A-17-765720-C (Clark County, Nevada, District Court) ($1 million class settlement for Nevada minimum wage violations)

*Afrouz Nikmanesh, et al. v. Wal-Mart Stores, Inc.,* Case No. 8:15-cv-00202-AG-JCG (C.D. Cal.) ($800,000 class and collective action settlement on behalf of Pharmacists who were required to attend immunization trainings and certifications without compensation)

*Kwesi Jones, et al. v. Farmers Insurance Exchange,* Case No. BC412413 (Los Angeles County Superior Court) ($3,900,000 class action settlement for unpaid wages resulting from pre-shift work on behalf of insurance claims adjusters)

*Richard Balint v. Paris LV Operating Co., LLC*, Case No. A-16-731891-C (Clark County, Nevada, District Court) ($525,000 class and collective action settlement on behalf of employees who were classified as exempt from overtime)

*Christina John, et al. v. Caesars Enterprise Services*, Case No. A-16-743972-C (Clark County, Nevada, District Court) ($1 million class and collective action settlement on behalf of call center employees who did not receive compensation for pre and post shift work activities)

*Randy Clayton, et al. v. On Demand Sedan Services, Inc.*, Case No. A-16-734923-C (Clark County, Nevada, District Court) ($424,500 class and collective action settlement on behalf of limousine drivers were not incorrectly classified as exempt from overtime)

*Markus Levert, et al. v. Trump Ruffin Tower I, LLC d/b/a Trump International Hotel Las Vegas*, Case No. A-14-700559-C (Clark County, Nevada, District Court) ($130,000 class and collective action settlement for off-the-clock violations)

*Brandy Welch, et al. v. Golden Gate Casino, LLC d/b/a Golden Gate Hotel & Casino,* Case No. 2:13-cv-01089-RFB-GWF (D. Nev.) ($750,000 class and collective action settlement on behalf of casino employees who were not paid for training time, pre-shift activities, and who were not paid the correct overtime rate of pay)

*Jamye Berry v. Aria Resort & Casino, LLC,* Case No. 2:14-cv-01321-APG-VCF (D. Nev.) ($860,000 class and collective action settlement on behalf of table games supervisors who were not paid overtime)

*Judith Smith v. Mandalay Corporation d/b/a Mandalay Bay Resort and Casino,* Case No. 2:14-cv-02158-APG-VCF (D. Nev.) ($100,000 settlement on behalf of poker room employees who were required to perform work activities without compensation)

*Nicole McDonagh, et al. v. Harrah's Las Vegas, Inc.,* Case No. 2:13-cv-01744-CWH (D. Nev.) ($850,000 class and collective action settlement on behalf of casino dealers who were required to attend pre-shift meetings off-the-clock)

*Darlene Lewis v. Nevada Property 1, LLC,* Case No. 2:12-cv-01564-RFB-GWF (D. Nev.) ($9.75 million settlement on behalf of employees for pre-shift work activities)

*Raymond Sullivan, et al. v. Desert Palace, Inc. d/b/a Caesars Palace*, Case No. A-14-710505-C (Clark County, Nevada, District Court) ($1.3 million collective and class action settlement on behalf of employees who picked up a cash bank off-the-clock)

*Raymond Sullivan, et al. v. Riviera Holdings Corp. dba Riviera Hotel and Casino*, Case No. 2:14-cv-00165-APG-VCF (D. Nev.) ($690,000 collective and class action case on behalf of employees who used a cash bank)

*Tiffany Sargant, et al. v. HG Staffing, LLC, MEI-GSR Holdings LLC dba Grand Sierra Resort*, Case No. 3:13-cv-453-LRH-WGC (D. Nev.) (conditionally certified class of employees who worked off-the-clock, including employees who use a cash bank)

*Danielle Ficken, et al. v. New Castle Corp. dba Excalibur Hotel and Casino*, Case No. 2:13-cv-00600-APG-GWF (D. Nev.) ($1.1 million collective and class settlement on behalf of employees who use a cash bank)

*Tenisha Martin, et al. v. Ramparts, Inc. dba Luxor Hotel and Casino*, 2:13-cv-00736-APG-VCF (D. Nev.) ($1.3 million collective and class settlement on behalf of employees who use a cash bank)

*Dorothy Turk-Mayfield v. Wynn Las Vegas, LLC*, Case No. A-13-683389-C (Clark County, Nevada, District Court) ($1.8 million class action settlement for off-the-clock banking activities)

*Darlene Lewis v. ARIA Resort & Casino, LLC*, Case No. A-12-663812-C (Clark County, Nevada, District Court) ($1.39 million class action settlement for off-the-clock banking activities)

*Natalie Antionett Garcia, et al. v. American General Finance Management Corporation, et al.*, Case No. 09-CV-1916-DMG (OPx) (C.D. Cal.) ($1.7 million class settlement improper payment of wages)

*Jeffrey Clewell v. Heavenly Valley Ltd*, Case No. 12-CV-00282-DC (Douglas County, Nevada, District Court) ($625,000 class settlement for unpaid overtime and waiting time penalties)

*Salvador Duarte, et al. v. General Parts, Inc., et al.*, Case No. RG-13-670382 (Alameda County, California, Superior Court) ($650,000 class action settlement for alleged off-the-clock violations)

*Victor Zapata v. M.C. Gill Corporation*, Case No. BC409066 (Los Angeles County, California, Superior Court) (reaching a $1 million class settlement for improper rounding)

*Clarence Edwards v. Circus Circus Casinos, Inc.*, Case No. A-14-701172-C (Clark County, Nevada, District Court) ($500,000 class action settlement for alleged off-the-clock violations)

*Pablo C. Martinez, et al. v. Victoria Partners, dba Monte Carlo Resort and Casino*, Case No. 2:14-cv-00144-APG-NJK ($481,224 class action settlement for off-the clock banking violations and pre and post-shift meeting activities)

*Dominique Whitaker, et al. v. Countrywide Home Loans, Inc., et al.,* Case No. CV09-5898-CAS (PJWx) (C.D. Cal.) ($7.5 million class action settlement for alleged off-the-clock violations).

**Speaking Engagements**

    Speaker, National Employment Lawyers Association (NELA) Wage and Hour Conference, *Navigating the Challenges in Representing Service Industry or "Tipped" Employees* (2017)

    Speaker, South Lake Tahoe Family Resource Center, *Forum on Immigrant Rights in the Workplace* (2017)

    Speaker, National Business Institute, *Human Resource Law*

**Selected Publications**

    Contributor, Wage and Hour Laws: A State-by-State Survey (3rd Ed.) (2016, 2018)

    Co-Author, *Employer-Sponsored Wellness Programs: Should Your Employer Be The Boss of More Than Your Work Life?*, 38 Sw. L. Rev. 465 (2009)

**Past Experience**

    Associate, Thierman Law Firm (2010-2015)

    Judicial Clerk, Nevada Supreme Court for the Honorable Ron D. Parraguirre (2008-2010)

    Law Student Extern, Schonbrun DeSimone Seplow Harris & Hoffman LLP (2008)

    Volunteer, Neighborhood Legal Services (NLS) Workers' Rights Clinic

**Admissions**

    California (2008)

    Nevada (2011)

    USDC Northern District of California

    USDC Southern District of California

    USDC Central District of California

    Sixth Circuit Court of Appeals

    Ninth Circuit Court of Appeals

    Eleventh Circuit Court of Appeals

    United States Supreme Court

**Education**

    Southwestern School of Law, J.D., *cum laude* (2008)

    University of Iowa, B.A., with honors in History (2001)

# EXHIBIT B

# EXHIBIT B

1 | SHAUN J. VOIGT, SBN 265721
E-Mail svoigt@fisherphillips.com
2 | FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
3 | Los Angeles, California 90071
Telephone: (213) 330-4500
4 | Facsimile: (213) 330-4501

5 | Attorneys for Defendant,
LADERA LENDING, INC.

6

7 | UNITED STATES DISTRICT COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9

10 | DEBORAH OCHINERO, individually, and    CASE NO.:  8:19-cv-01136-JVS-ADS
on behalf of all others similarly situated,

11 |                                        **CLASS ACTION**
                  Plaintiff,
12 |                                        **STIPULATION OF CLASS ACTION AND
      v.                                   PAGA SETTLEMENT**
13
LADERA LENDING, INC.; and DOES 1
14 | through 100, inclusive;

15 |               Defendants.

16

17

18

19 |        This Stipulation of Class Action and PAGA Settlement ("Stipulation of Settlement") is

20 | made by and between named plaintiff DEBORAH OCHINERO (collectively "Named

21 | Plaintiff") on her own behalf and on behalf of all members of the Settlement Class, as defined

22 | below, on the one hand, and defendant LADERA LENDING, INC. ("Defendant") on the other

23 | hand (collectively the "Parties"), in the lawsuit entitled *Deborah Ochinero v. Ladera Lending,*

24 | *Inc.*, Case No. 8:19-cv-01136-JVS-ADS (C.D. Cal) ("the Litigation"). This Stipulation of

25 | Settlement resolves all claims that were asserted or could have been asserted against Defendant

26 | pertaining to the individual, putative class, and representative claims set forth by Named

27 | Plaintiff in the Litigation, consistent with the terms of this Stipulation of Settlement.

28 | ///

# I.   DEFINITIONS

A.   **Administrative Costs.**  All administrative costs of settlement, including cost of notice to the Settlement Class, claims administration, and any fees and costs incurred or charged by the Settlement Administrator in connection with the execution of its duties under this Stipulation of Settlement.

B.   **Agreement.**  The terms "Agreement" or "Settlement Agreement" are used synonymously herein to mean this Stipulation of Settlement for purposes of Settlement.

C.   **Class Counsel.**  The term "Class Counsel" as used herein means: Joshua D. Buck, Esq. of THIERMAN BUCK LLP, and all of the lawyers of that firm; and James B. Zouras, Esq. of STEPHAN ZOURAS, LLP, and all of the lawyers of that firm.  The term "Class Counsel" shall be used synonymously with the term "Plaintiff's Counsel."

D.   **Class Period.**  The term "Class Period" as used herein means the period from May 31, 2018 to the date that the Court signs the Preliminary Approval Order.

F.   **Court.**  The term "Court" as used herein means the United States District Court, Central District of California.

G.   **Counsel for Defendant.**  The term "Counsel for Defendant" as used herein means: Todd B. Scherwin, Esq. and Shaun J. Voigt, Esq. of FISHER & PHILLIPS LLP, and all of the lawyers of that firm.

H.   **Final.**  The term "Final" means: (1) the date of final affirmation of the Final Approval from any appeal, the expiration of the time for, or the denial of, a petition to review the Final Approval, or if review is granted, the date of final affirmation of the Final Approval following review pursuant to that grant; or (2) the date of final dismissal of any appeal from the Final Approval or the final dismissal of any proceeding to review the Final Approval, provided that the Final Approval is affirmed and/or not reversed in any part; or (3) if no putative class members intervene but objections are filed, the expiration date of the time for the filing or noticing of any appeal from the Court's Final Approval of the Settlement; or (4) if no putative class members intervene and there are no objections, the date the Court enters the Final Approval Order and Final Judgment.

**I.     Final Approval Order.**  The term "Final Approval Order" means the Final Approval Order entered by the Court following the Final Fairness and Approval Hearing.

**J.     Final Judgment.**  The term "Final Judgment" means the Final Judgment entered by the Court following the Final Fairness and Approval Hearing.

**K.     Date of Final Approval.**  The terms "Date of Final Approval" or "Final Approval" as used herein mean the final formal judgment entered by the Court at the Final Fairness and Approval Hearing in accordance with the terms herein, approving this Agreement.

**L.     Defendant.**  The term "Defendant" as used herein means the named defendant in the Litigation, defendant Ladera Lending, Inc.

**M.     Employer Taxes.**  The term "Employer Taxes" as used herein means the employer-funded share of taxes and contributions imposed on the wage portions of the Settlement Amount under the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and/or any similar state taxes and contributions required of employers, such as for unemployment insurance.  The Employer Taxes will be paid separately by Defendant in addition to and at the same time as the Settlement Amount.

**N.     Litigation.**  The term "Litigation" as used herein means the operative civil complaint that was filed in California state court and any amendments thereto, including the First Amended Complaint, which is currently captioned *Deborah Ochinero v. Ladera Lending, Inc.*, Case No. 8:19-cv-01136-JVS-ADS (C.D. Cal).

**O.     Named Plaintiff.**  The term "Named Plaintiff" as used herein means the named plaintiff in this action, Deborah Ochinero.

**P.     Net Settlement Amount.**  The term "Net Settlement Amount" as used herein means the Settlement Amount minus any award of attorneys' fees and Litigation costs, Administrative Costs, enhancement to the Named Plaintiff, and the State of California's portion of the penalties allocated pursuant to California's Private Attorney General Act ("PAGA") ("PAGA Settlement"), as provided in Sections XIV, VIII, XV, XVI, and XVII respectively.

**Q.     Net Settlement Payments.**  The term "Net Settlement Payment(s)" shall mean payments made to the Settlement Class as part of the Settlement, including wages, penalties and

STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT

interest. The Class Members' share of taxes for the wage portions of the Settlement Payment shall be taken from each Net Settlement Payment.

     **R.**    **Notice of Proposed Class Action Settlement.**  "Notice of Proposed Class Action Settlement" or "Notice" shall mean the notice to be provided to all Settlement Class Members regarding the terms of this Settlement, substantially in the form attached hereto as **Exhibit A**. The Notice shall constitute formal class notice.

     **S.**    **Preliminary Approval Order**.  The term "Preliminary Approval Order" shall mean the order entered by the Court following the Preliminary Approval Hearing**.**

     **T.**    **Settlement.**  The term "Settlement" as used herein means this Agreement to resolve the Litigation.

     **U.**    **Settlement Administrator.**  The term "Settlement Administrator" as used herein means Simpluris, which will be responsible for the administration of the Settlement Payment, as defined below, and all related matters.

     **V.**    **Settlement Agreement.** The terms "Settlement Agreement" or "Agreement" are used synonymously herein to mean this Stipulation of Settlement.

     **W.**    **Settlement Amount.**  The terms "Settlement Amount" as used herein means a fund in the sum of four hundred eighty-five thousand dollars and zero cents ($485,000.00), which shall be paid by Defendant, and from which all: Net Settlement Payments, Court approved attorneys' fees and Litigation costs, Administrative Costs, enhancement to Named Plaintiff, and State of California's portion of the PAGA Settlement shall be paid, except as provided herein.  The Settlement Amount shall be non-reversionary.

     **X.**    **Settlement Class.**  For settlement purposes only, the Parties agree to the certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, defined as: All current and former employees of Defendant who worked for Defendant as loan officers within the State of California at any time within the Class Period.

## II.    <u>BACKGROUND</u>

     **A.**    In the Litigation, the Named Plaintiff allege, *inter alia*, on behalf of themselves and all others similarly situated, that Defendant violated California state wage and hour laws

and the California *Business and Professions Code* Section 17200 *et seq.*, and PAGA, as a result of Defendant's California wage and hour policies and practices.  Specifically, Named Plaintiff alleges that Defendant failed to pay all owed wages, including minimum wages, regular wages, overtime wages, and double-time wages; failed to provide overtime pay and to pay overtime at the legally required rate; failed to authorize and permit legally compliant rest periods; failed to provide legally compliant meal periods; failed to timely issue accurate itemized wage statements; and engaged in unfair and unlawful business practices.  Named Plaintiff further alleges that the aforementioned resulted in the underpayment of wages to employees upon termination and/or resignation.  Finally, Named Plaintiff alleges that Defendant's wage and hour practices establish liability for penalties recoverable pursuant to California's PAGA.

**B.**     Class Counsel conducted informal discovery and investigation that yielded information and documentation concerning the claims set forth in the Litigation, such as Defendant's policies and procedures regarding overtime, the payment of wages, the provision of meal and rest periods, issuance of wage statements, and the payment (or alleged non-payment) of all wages at separation, as well as information regarding the number of putative class members, workweeks, and the wage rates in effect.

**C.**     Named Plaintiff and Class Counsel have engaged in good faith, arms-length negotiations with Defendant concerning possible settlement of the claims asserted in the Litigation.  On March 12, 2020, the Parties participated in a mediation before mediator Michael Loeb, Esq that ultimately resulted in a tentative settlement of the Litigation, subject to certain contingencies and the approval of the Court, along with finalization of a formal Stipulation for Settlement.  The Parties have since engaged in extensive negotiations about the terms and conditions of the Settlement Agreement.  The Parties have now entered into a more detailed, formalized Settlement Agreement for submission to the Court for approval.

**D.**     Class Counsel has conducted an investigation of the law and facts relating to the claims asserted in the Litigation and has concluded, taking into account the sharply contested issues involved, the expense and time necessary to pursue the Litigation through trial and any appeals, the risks and costs of further prosecution of the Litigation, the risk of an adverse

outcome, the uncertainties of complex litigation, and the substantial benefits to be received by the Named Plaintiff and the members of the Settlement Class pursuant to this Stipulation for Settlement, that a settlement with Defendant on the terms and conditions set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class. Named Plaintiff, on her own behalf and on behalf of the Settlement Class, has agreed to settle the Litigation on the terms set forth herein.

E.       Defendant has concluded that, because of the substantial expense of defending against the Litigation, the length of time necessary to resolve the issues presented herein, the inconvenience involved, and the concomitant disruption to its business operations, it is in its best interests to accept the terms of this Agreement. Defendant denies each of the allegations and claims asserted against it in the Litigation. Defendant nevertheless desires to settle the Litigation for the purpose of avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Litigation.

F.       This Agreement is intended to and does effectuate the full, final and complete resolution of all allegations and claims that were asserted, or could have been asserted, during the Class Period in the Litigation by Named Plaintiff and members of the Settlement Class as set forth in Section II.A, including the factual allegations and claims asserted by Named Plaintiff in the Litigation.

## III.  JURISDICTION

The Court has jurisdiction over the Parties and the subject matter of this Litigation. The Litigation includes claims that, while Defendant denies them in their entirety, would, if proven, authorize the Court to grant relief pursuant to the applicable statutes. After the Court has granted Final Approval of the Settlement, the Court shall retain jurisdiction of this action solely for the purpose of interpreting, implementing, and enforcing this Settlement consistent with the terms set forth herein.

## IV.  STIPULATION OF CLASS CERTIFICATION

The Parties stipulate to the certification of the Settlement Class for purposes of Settlement only. This Stipulation is contingent upon the Preliminary and Final approval and

STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT

FP 37641713.1

certification of the Settlement Class only for purposes of settlement. Should the Settlement not become final, for whatever reason, the fact that the Parties were willing to stipulate provisionally to class certification as part of the Settlement shall have no bearing on, and shall not be admissible in connection with, the issue of whether a class should be certified in a non-settlement context in the Litigation. Defendant expressly reserves the right to oppose class certification and / or to proactively move to deny class certification should this Settlement be modified or reversed on appeal or otherwise not become final.

## V.  MOTION FOR PRELIMINARY APPROVAL

Named Plaintiff will bring a motion before the Court for an order preliminarily approving the Settlement including the Notice of Proposed Class Action Settlement, which is attached as **Exhibit** "**A**," and including conditional certification of the Settlement Class for settlement purposes only and will request that the Court enter the Preliminary Approval Order. The date that the Court grants Preliminary Approval of this Agreement will be the "Preliminary Approval Date." Class Counsel will prepare the Motion for Preliminary Approval.

## VI.  STATEMENT OF NO ADMISSION

A.  Defendant expressly denies liability to Named Plaintiff and to the Settlement Class upon any claim or cause of action. This Agreement does not constitute, and is not intended to constitute, an admission by Defendant as to the merits, validity, or accuracy of any of the allegations or claims made against them in the Litigation.

B.  Nothing in this Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the negotiations leading to this Agreement or the Settlement, is intended by the Parties to constitute, nor will any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other forum or proceeding as evidence of any violation of any federal, state, or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. The Parties themselves agree not to introduce, use, or admit this Agreement, directly or indirectly, in this case or any other judicial, arbitral, administrative, investigative or

7

other forum or proceeding, as purported evidence of any violation of any federal, state, or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity, or for any other purpose.  Notwithstanding the foregoing, this Agreement may be used in any proceeding before the Court that has as its purpose the interpretation, implementation, or enforcement of this Agreement or any orders or judgments of the Court entered in connection with the Settlement.

C.    None of the documents produced or created by Named Plaintiff or the Settlement Class in connection with the claims procedures or claims resolution procedures constitute, and they are not intended to constitute, an admission by Defendant of any violation of any federal, state, or local law, statute, ordinance, regulation, rule or executive order, any California Wage Order, or any obligation or duty at law or in equity.

D.    The Parties agree that class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure under the terms of this Agreement is for settlement purposes only.  Nothing in this Agreement will be construed as an admission or acknowledgement of any kind that any class should be certified or given collective treatment in the Litigation or in any other action or proceeding.  Further, neither this Agreement nor the Court's actions with regard to this Agreement will be admissible in any court or other tribunal regarding the propriety of class certification or collective treatment.  In the event that this Agreement is not approved by the Court or any appellate court, is terminated, or otherwise fails to be enforceable, Named Plaintiff will not be deemed to have waived, limited or affected in any way any claims, rights or remedies in the Litigation, and Defendant will not be deemed to have waived, limited, or affected in any way any of its objections or defenses in the Litigation.

**VII.    WAIVER, RELEASE, DISMISSAL, AND CONFIDENTIALITY**

A.    **Release as to All Settlement Class Members.**

Upon the Date of Final Approval, Named Plaintiff and all members of the Settlement Class, except those that make a valid and timely request to be excluded from the Settlement Class and Settlement, waive, release, discharge, and promise never to assert in any forum the following claims against Defendant, its past and present officers, directors, shareholders, unit

8

DocuSign Envelope ID: E7F9B79A-A37B-4888-B438-AF1893C4C48A

holders, managers, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, and its respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys from all claims, demands, rights, liabilities and causes of action that were pled in any of the complaints in the Litigation, or which could have been pled in any of the complaints in the Litigation based on the factual allegations therein, that arose during the Class Period with respect to the following claims: (a) failure to pay all minimum wages and regular wages owed (including without limitation Labor Code §§ 1182.12, 1194, 1197 & 1198, et seq.); (b) failure to pay all overtime and double-time wages owed (including without limitation Labor Code §§ 510, 1194, 1197.1, and 1198); (c) failure to provide meal periods, or premium pay for non-compliant meal periods (including without limitation Labor Code §§ 226.7, 512(a) & 1198 et seq.); (d) failure to authorize and permit rest periods, or provide premium pay for non-complaint rest periods (including without limitation Labor Code §§ 226.7 & 1198 et seq.); (e) failure to provide accurate, itemized wage statements (including without limitation Labor Code §§ 226 and 226.3); (f) failure to timely pay wages upon separation of employment (including without limitation Labor Code §§ 201 & 202, et seq.); (g) all claims for unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above (including without limitation Business & Professions Code §§ 17200, *et seq*.); (h) all claims under the Fair Labor Standards Act (FLSA) that could have been premised on the facts, claims, causes of action or legal theories described above; and (i) all claims under California Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698, *et seq.* (hereinafter "PAGA") that could have been premised on the facts, claims, causes of action or legal theories described in the Litigation and above.

**B.    General Release by Named Plaintiff Only.**

In addition to the release made in Section VII.A., upon the Court's entry of its Final Approval Order, Named Plaintiff individually makes the additional following general release of all claims, known or unknown.

Named Plaintiff individually releases Defendant, and each of its respective subsidiaries, affiliates, predecessors or successors in interest, officers, directors, shareholders, employees,

9

FP 37641713.1

attorneys, agents, assigns, insurers, and re-insurers of any of them, from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any Defendant.  (The release set forth in this Paragraph B shall be referred to hereinafter as the "General Release.")

With respect to the General Release, Named Plaintiff stipulates and agrees that, upon the Date of Final Approval, Named Plaintiff shall be deemed to have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Accordingly, if the facts relating in any manner to this Settlement are found hereafter to be other than or different from the facts now believed to be true, the release of claims contained herein shall be effective as to all unknown claims.

### C. Publicity.

Named Plaintiff, Class Counsel and Counsel for Defendant agree that they have not and will not discuss, disclose, or communicate the Settlement, other than pursuant to the terms of this Agreement.  Named Plaintiff, Class Counsel and Counsel for Defendant also agree that they have not and will not publish the Settlement.  Named Plaintiff, in response to inquiries, will state that that "the Litigation was resolved."  Class Counsel shall not report the Settlement in any medium or in any publication, shall not post or report anything regarding the Litigation or the Settlement on their websites, and shall not contact the press, reporters or general media regarding the Settlement.  As used herein, "press, reporters, or general media" shall refer to and include newspapers, periodicals, magazines, online publications, and television and radio

DocuSign Envelope ID: E7F9B79A-A37B-4888-B438-AF1893C4C48A

stations and programs, and any representative of the foregoing. Upon receipt of an inquiry from the press, reporters, or general media, Class Counsel and Counsel for Defendant shall respond "we have no comment." However, Named Plaintiff's attorneys are authorized to make a limited disclosure to the Court for the purposes of obtaining the approval of the settlement. This disclosure is limited to court filings and neither Named Plaintiff nor their counsel or representatives are permitted to disseminate or publish, distribute or discuss the information provided to the Court in those filings outside the filings themselves and any hearing held on those filings, unless ordered otherwise by the Court. Nothing herein shall prevent Class Counsel from communicating with Named Plaintiff and members of the Settlement Class or the Settlement Administrator regarding the terms of this Stipulation and/or the Settlement. Notwithstanding the foregoing, Class Counsel may include the settlement (and/or a summary of the settlement) in future declarations filed in support of Class Counsel's experience and/or adequacy to represent PAGA aggrieved employees or class members.

## VIII. SETTLEMENT ADMINISTRATOR

Named Plaintiff and Defendant, through their respective counsel, have selected Simpluris as the Settlement Administrator to administer the Settlement, which includes but is not limited to distributing the Notice of Proposed Class Action Settlement (including obtaining updated class member addresses, performing a National Change of Address search, and/or skip-tracing), establishing a toll-free number to respond to inquiries regarding the Settlement, determining the validity of the opt-outs, keeping track of opt-outs and objections, and calculating all amounts to be paid from the Settlement, including the amount of all payroll tax deductions to be withheld or backup withholdings, deducting appropriate tax withholdings and paying them to the appropriate government entity, mailing checks for individual settlement payments for attorneys' fees and litigation costs, enhancements to the Named Plaintiff, and penalties under PAGA, providing Class Counsel and Counsel for Defendant with weekly updates on the status of Settlement administration (including numbers and percentages of mailed Notices, returned Notices, re-mailed Notices, undeliverable Notices, opt-outs, and objections), providing declarations and/or reports as required for court filings, and for any other

STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT

tasks that the Parties may mutually agree or the Court orders the Claims Administrator to perform. Charges and expenses of the Settlement Administrator are estimated to be $12,000.00 and will be paid from the Settlement Amount. Any charges and expenses of the Settlement Administrator greater than the estimated $12,000.00 will be paid from the Settlement Amount. If the actual Settlement Administrator fees are less than the Parties' estimation, the difference between the actual and estimated Settlement Administrator fees will flow through to the Net Settlement Amount.

## IX.  NOTICE, OBJECTIONS AND EXCLUSION RIGHTS

### A.  Notice.

Named Plaintiff and Defendant, through their respective attorneys, have jointly prepared a Notice of Class Action and Proposed Settlement (the "Notice") that will be provided to the members of the Settlement Class through the following procedure:

As soon as practicable following Preliminary Approval of the Settlement, but no later than thirty (30) days after the Court's Preliminary Approval order, Defendant will provide to the Settlement Administrator the following information about each Settlement Class member: (1) name; (2) last known home address; (3) number of workweeks during the Class Period based on dates of employment; and (4) social security number (collectively the "Class List").

The Settlement Administrator shall run all the addresses provided through the United States Postal Service NCOA database (which provides updated addresses for any individual who has moved in the previous four years who has notified the U.S. Postal Service of a forwarding address) to obtain current address information. The Settlement Administrator shall mail the Notice to the members of the Settlement Class via first-class regular U.S. Mail using the most current mailing address information available within fourteen (14) calendar days after the receipt of the Class List from Defendant.

The Notice shall provide the members of the Settlement Class with a sixty (60) day notice of all applicable dates and deadlines. The Notice will also include information regarding the nature of the Litigation; a summary of the terms of the Settlement; the definition of the Settlement Class member; a statement that the Court has preliminarily approved the Settlement;

the procedure and time period for objecting to the Settlement; the date and location of the Final Approval hearing; information regarding the opt-out procedure; Defendant's calculation of the number of workweeks during the Class Period; and the estimated individual settlement payment the Class member will receive if they do not validly opt-out of the Settlement.

If a Notice is returned from the initial notice mailing, the Settlement Administrator will submit the applicable and available information, including name, social security number, and original mailing address, to a company that specializes in address skip tracing in an attempt to locate a more current address. If the Settlement Administrator is successful in locating a new address, it will re-mail the Notice to the Settlement Class member. Further, any Notices returned with a forwarding address to the Settlement Administrator, as non-deliverable before the deadline date, shall be sent to the forwarding address affixed thereto. If the Settlement Administrator is unsuccessful in locating a new address, it will re-mail the Notice to the original address it had for the Settlement Class member.

No later than twenty-five (25) days prior to the Final Approval Hearing, the Settlement Administrator shall provide Counsel for Defendant and Class Counsel with a declaration attesting to the completion of the Notice process, including the number of attempts to obtain valid mailing addresses for and re-sending of any returned Notices, as well as the number of valid opt-outs and deficiencies which the Settlement Administrator received.

**B.    Objections.**

In order for any Settlement Class member to object to this Settlement, or any term of it, the person making the objection must not submit a request for exclusion (i.e., must not opt out) and must, by no later than sixty (60) days after the Notice of Proposed Class Action Settlement was initially mailed to the Settlement Class members, mail to the Settlement Administrator a written statement of the grounds of objection, signed by the objecting Settlement Class member or his or her attorney, along with all supporting papers. All such objections and written notices of intention to appear must be signed and must contain the Settlement Class member's name and address and the address of counsel, if any. The objection should clearly explain why the settlement class member objects to the Settlement and state whether the Settlement Class

member (or someone on his or her behalf) intends to appear at the Final Approval Hearing.  The

Settlement Administrator shall immediately upon receipt transmit to the Parties' counsel copies

of all objections and supporting papers.  The Parties then shall file the objections and all

supporting papers with the Court on the next business day after receipt.  The date of the

objection's postmark shall be conclusive as to whether the objection was timely submitted.  A

Settlement Class member may appear personally or through an attorney, at his or her own

expense, at the Final Approval hearing to present his or her objection directly to the Court.  Any

attorney who will represent an individual objecting to this Settlement must file a notice of

appearance with the Court and serve Class Counsel and Defense Counsel no later than sixty

(60) days after the Notice of Proposed Class Action Settlement was initially mailed to the

Settlement Class members.  If a Settlement Class member objects to this Settlement, the

Settlement Class member will remain a member of the Settlement Class and if the Court

approves this Agreement, the Settlement Class member will be bound by the terms of the

Settlement and Final Approval in the same way and to the same extent as a settlement class

member who does not object.  The date of mailing of the Notice of Proposed Class Action

Settlement to the objecting Settlement Class member shall be conclusively determined

according to the records of the Settlement Administrator.  The Court retains final authority with

respect to the consideration and admissibility of any Settlement Class member objections.

Provided that the Settlement Administrator mailed the Notice to a member of the Settlement

Class as set forth in Paragraph IX.A., this deadline to mail an objection shall apply

notwithstanding assertion by any member of the Settlement Class of non-receipt of the Notice.

**C.**     **Opportunity to be Excluded.**

In order for any Settlement Class member to validly exclude himself or herself from the

Settlement (i.e., to validly opt out), a written request for exclusion ("Request to be Excluded")

must be signed by the Settlement Class member or his or her authorized representative and must

be sent to the Settlement Administrator, postmarked by no later than sixty (60) days after the

date the Settlement Administrator initially mails the Notice of Proposed Class Action

Settlement to the Settlement Class members.  The Notice of Proposed Class Action Settlement

shall contain instructions on how to opt out.  Specifically, the Notice of Proposed Class Action Settlement shall specify that the Settlement Class Member's Request to be Excluded must include the Class Member's name and address, be signed by the Settlement Class Member, and state words to the effect of the following: "I hereby request to be excluded from the Class Action Settlement in *Ochinero v. Ladera Lending, Inc.*"

The date of the initial mailing of the Notice, and the date the signed request to be excluded was postmarked, shall be conclusively determined according to the records of the Settlement Administrator.  Any Settlement Class member who timely and validly submits a request to be excluded from the Settlement Class and this Settlement will not be entitled to any individual settlement payment, will not be bound by the terms and conditions of this Settlement, and will not have any right to object, appeal, or comment thereon.  Any member of the Settlement Class who does not timely file and mail a request to be excluded from the Settlement Class will be deemed included in the Settlement Class in accordance with this Settlement. Named Plaintiff waives any right to be excluded from the Settlement Class.

### D. Non-Cooperation.

The Parties and their counsel agree not to encourage members of the Settlement Class to opt out of this settlement, or to object to the Settlement, directly or indirectly, through any means.  If a Settlement Class member contacts Class Counsel, Class Counsel may objectively discuss the terms of the Settlement and the Settlement Class member's options.

## X. CLAIMS PROCEDURE

Settlement Class members shall not be required to submit a claim form to participate in the Settlement.  Named Plaintiff and Defendant have agreed upon the following procedure to resolve all claims during the Class Period.

In the Notice of Proposed Class Action Settlement, each member of the Settlement Class will receive a calculation of the total number of workweeks as a Settlement Class member in California during the Class Period (hereinafter "Eligible Workweeks"), as well as the Settlement Class Member's estimated Net Settlement Payment.  Periods of non-membership in

DocuSign Envelope ID: E7F3B79A-A37B-4888-B438-AF1893C4C48A

the Class (i.e., in an exempt position or outside California or outside the Class Period) are excluded from the Eligible Workweeks calculation.

If the member of the Settlement Class disputes the number of Eligible Workweeks set forth in the Notice, such person must follow the directions in the Notice, including preparing a statement setting forth the number of Eligible Workweeks that such person believes in good faith is correct and stating that the member of the Settlement Class authorizes the Settlement Administrator to review the Settlement Class member's personnel file to determine such information and attaching any relevant documentation in support thereof.  The member of the Settlement Class must mail the signed and completed statement no later than sixty (60) days after the date of the mailing of the Notice, or the number of Eligible Workweeks set forth in the Notice will govern the Net Settlement Payments to the members of the Settlement Class.

Upon timely receipt of any such challenge, the Settlement Administrator, in consultation with Class Counsel and Counsel for Defendant, will review the pertinent payroll records showing the dates the Settlement Class member was employed and the pertinent leave(s) taken, which records Defendant agrees to make available to the Settlement Administrator.  The Settlement Administrator shall compute the number of Eligible Workweeks to be used in computing the Settlement Class member's pro rata share of the Net Settlement Amount.  In the event there is a disparity between the dates a Settlement Class member claims he or she worked during the Class Period and the dates indicated by Defendant's records, Defendant's records will control unless inconsistent with paycheck stub(s) (or bona fide copies thereof) provided by the Settlement Class member, in which case the paycheck stub(s) will control.  The Settlement Administrator's decision as to the total number of Eligible Workweeks shall be final and non-appealable.  The Settlement Administrator shall send written notice of the decision on any such claim to the Settlement Class member, to Class Counsel, and Counsel for Defendant within ten (10) calendar days of receipt of the dispute.

///

///

///

## XI. FINAL APPROVAL HEARING AND ENTRY OF FINAL APPROVAL ORDER AND FINAL JUDGMENT

Upon expiration of the Objection/Exclusion Deadlines, on the date set forth in the Preliminary Approval Order, a Final Approval Hearing shall be conducted in order to: (1) review this Settlement and determine whether the Court should give it final approval; (2) consider any objections timely submitted before the Objection Deadline; and (3) consider Class Counsel's request for attorney's fees and costs, the Named Plaintiff's Enhancement Award, and the requested Administrative Costs. At the Final Approval Hearing, Named Plaintiff, through Class Counsel, shall ask the Court to grant final approval to this Settlement and shall submit a Final Approval Order and a Final Judgment, to the Court for its approval. The Parties shall take all reasonable efforts to secure entry of the Final Approval Order and Final Judgment.

## XII. COMPUTATION AND DISTRIBUTION OF PAYMENTS

### A. Distribution Formula.

Members of the Settlement Class not opting out will receive a lump sum payment as good and valuable consideration for the waiver and release of claims set forth in Section VII.A., above, in an amount determined by the Settlement Administrator in accordance with the provisions of this Agreement. The lump sum payment to each member of the Settlement Class not excluding him/herself will be determined by dividing the Net Settlement Amount by the total number of Eligible Workweeks calculated for all members of the Settlement Class during the Class Period (the "Workweek Amount") and then multiplying the Workweek Amount by the number of Eligible Workweeks by the individual Class Member as by the Settlement Administrator in accordance with Section X, above, less any applicable withholding taxes based on the Parties stipulated allocation of the Net Settlement Amount as provided for in Section XVI, below.

### B. Funding of Settlement.

Within thirty (30) calendar days after the agreement becomes Final, Defendant will deposit the Net Settlement Payments, Court approved enhancement to Named Plaintiff, Court approved attorney's fees and Litigation costs, Claims Administration Costs and the PAGA

1  Settlement into an interest-bearing trust account for the benefit of Settlement Class members

2  and Class Counsel, through the Settlement Administrator.  At no time prior to the date on which

3  the Settlement becomes Final shall Defendant be required to escrow any portion of the

4  Settlement Amount.

5        **C.      Time for Distribution.**

6        Within forty-five calendar days following the date on which the settlement becomes

7  Final, the Settlement Administrator shall mail the Net Settlement Payments, State of California

8  portion of the PAGA Settlement, and Court approved enhancement to Named Plaintiff.  Also,

9  within the same 45-day period, the Settlement Administrator shall deduct its Administrative

10  Costs from the Settlement Amount.  Settlement checks shall remain negotiable for one hundred

11  and eighty (180) days from the date of mailing.  If settlement check remains uncashed after one

12  180 days from issuance, the Settlement Administrator shall distribute the value of the uncashed

13  checks, plus any interest that has accrued thereon, to the Justice Gap Fund.  The Settlement

14  Administrator shall void any tax documents issued to Settlement Class members who did not

15  cash their checks within 180 days of issuance.  In such event, such Settlement Class member

16  shall nevertheless remain bound by the Settlement.  Prior to the Final Approval hearing, the

17  Parties shall provide the Court the total amount that will be payable to the Settlement Class

18  member.  The Parties also shall request that the Court set a date for the Parties to report to the

19  Court the total amount that was actually paid to Settlement Class member.

20  **XIII.   NO CONTRIBUTIONS TO EMPLOYEE BENEFIT PLAN**

21        The amounts paid under this Agreement do not represent a modification of any

22  previously credited hours of service under any employee benefit plan, policy or bonus program

23  sponsored by Defendant.  Such amounts will not form the basis for additional contributions to,

24  benefits under, or any other monetary entitlement under, benefit plans (self-insured or not)

25  sponsored by Defendant's, policies or bonus programs.  Any payments made under the terms of

26  this Settlement shall not be applied retroactively, currently or on a going forward basis as

27  salary, earnings, wages, or any other form of compensation for the purposes of Defendant's

28  benefit plan, policy or bonus program.  Defendant retains the right to modify the language of

DocuSign Envelope ID: E7F3B79A-A37B-4888-B438-AF1893C4C48A

1  their benefit plans, policies and bonus programs to effect this intent and to make clear that any

2  amounts paid pursuant to this Settlement are not for "hours worked," "hours paid," "hours of

3  service," or any similar measuring term as defined by applicable plans, policies and bonus

4  programs for purpose of eligibility, vesting, benefit accrual or any other purpose, and that

5  additional contributions or benefits are not required by this Settlement.

6  **XIV.   ATTORNEYS' FEES AND LITIGATION COSTS**

7      **A.   Class Counsel Attorneys' Fees and Litigation Costs.**

8          Defendant shall not oppose an application by Class Counsel for, and Class Counsel shall

9  not seek or receive an amount in excess of $161,666.00, which represents $33^1/_3$% of the

10  Settlement Amount for all past and future attorneys' fees necessary to prosecute, settle and

11  administer the Litigation and this Settlement. Additionally, Defendant shall not oppose an

12  application by Class Counsel for, and Class Counsel shall not seek or receive an amount in

13  excess of twenty thousand dollars ($20,000.00), which represents all past and future Litigation

14  costs and expenses necessary to prosecute, settle and administer the Litigation and this

15  Settlement. Any attorneys' fees or Litigation costs awarded to Class Counsel by the Court shall

16  be deducted from the Settlement Amount for the purpose of determining the Net Settlement

17  Amount. The "future" aspect of these amounts include, without limitation, all time and

18  expenses expended by Class Counsel in defending the Settlement and securing Final Approval

19  (including any appeals therein).

20          There will be no additional charge of any kind to either the members of the Settlement

21  Class or request for additional consideration from Defendant for such work. This amount shall

22  include all attorneys' fees, Litigation costs and expenses for which Named Plaintiff and Class

23  Counsel could claim under any legal theory whatsoever. Within forty-five (45) calendar days

24  following the Date of Final Approval, the Settlement Administrator shall disburse payment

25  from the Settlement Amount for the amount of attorneys' fees and Litigation costs approved by

26  the Court to Class Counsel. Should the Court approve a lesser percentage or amount of fees

27  and/or Litigation costs than the amount that Class Counsel ultimately seeks, then the

28  unapproved portion or portions shall flow to the Net Settlement Amount.

## XV.  ENHANCEMENT TO NAMED PLAINTIFF

Defendant shall not oppose an application by Named Plaintiff, and Named Plaintiff shall not seek or receive an amount in excess of eighteen thousand dollars and zero cents ($18,000.00) for participation in and assistance with the Litigation.  Any enhancement awarded to Named Plaintiff by the Court shall be deducted from the Settlement Amount for the purpose of determining the Net Settlement Amount, and shall be reported on IRS Form 1099.  If the Court approves an enhancement of less than $18,000.00 to the Named Plaintiff, any unapproved portion or portions shall flow to the Net Settlement Amount.

## XVI.  TAXATION AND ALLOCATION

The amount paid to each participating Settlement Class member shall be net of the participating Settlement Class member's share of all federal, state and local taxes and required withholdings, including without limitation, FICA, Medicare tax, FUTA, and state unemployment taxes. The Employer Taxes for Defendant's share of taxes for the wage portions of the Settlement Payment shall be paid by Defendant separately and in addition to Defendant's payment of the Settlement Amount.  The Parties agree that all employment taxes and other legally required withholdings will be withheld from payments to the members of the Settlement Class and Named Plaintiff based on the Parties stipulated allocation of the Net Settlement Amount as provided for in this Section.  The amount of federal income tax withholding will be based upon a flat withholding rate for supplemental wage payments in accordance with Treas. Reg. § 31.3402(g)-1(a)(2) as amended or supplemented.

Income tax withholding will be made pursuant to applicable state and/or local withholding codes or regulations.  For withholding tax characterization purposes and payment of taxes, the Net Settlement Amount shall be deemed and is allocated as follows ("Net Settlement Allocation"): (1) 1/3% as wages; (2) 1/3% as penalties; and (3) 1/3% as interest.

Forms W-2 and/or Forms 1099 will be distributed at times and in the manner required by the Internal Revenue Code of 1986 (the "Code") and consistent with this Agreement.  If the Code, the regulations promulgated thereunder, or other applicable tax law, is changed after the

date of this Agreement, the processes set forth in this Section may be modified in a manner to bring Defendant into compliance with any such changes.

**CIRCULAR 230 DISCLAIMER**. EACH PARTY TO THIS STIPULATION OF SETTLEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS STIPULATION OF SETTLEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS STIPULATION OF SETTLEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS STIPULATION OF SETTLEMENT, (B) HAS NOT ENTERED INTO THIS STIPULATION OF SETTLEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS STIPULATION OF SETTLEMENT.

## XVII.   PRIVATE ATTORNEY GENERAL ACT ALLOCATION

In order to implement the terms of this Settlement and to settle claims alleged under the Private Attorneys' General Act ("PAGA"), California *Labor Code* section 2698 *et seq.*, the Parties agree to allocate forty-eight thousand five hundred dollars and zero cents ($48,500.00) of the Settlement Amount as the PAGA Settlement from which $36,375.00 will be paid to the California Labor Workforce Development Agency ("LWDA") and $12,125.00 to Settlement Class members by having that 25% amount flow through to the Net Settlement.  Within forty-

five (45) calendar days following the date the settlement becomes Final, the Settlement Administrator shall disburse the $35,451.00 to the LWDA.

## XVIII. COURT APPROVAL

This Agreement and the Settlement is contingent upon Final Approval by the Court. Named Plaintiff and Defendant agree to take all steps as may be reasonably necessary to secure Preliminary Approval and Final Approval of the Settlement, to the extent not inconsistent with the terms of this Agreement, and will not take any action adverse to each other in obtaining Court approval, and, if necessary, appellate approval, of the Settlement in all respects. Named Plaintiff and Defendant expressly agree that they will not file any objection to the terms of this Stipulation of Settlement or assist or encourage any person or entity to file any such objection.

## XIX. MISCELLANEOUS PROVISIONS

### A. Stay of Litigation.

Named Plaintiff and Defendant agree to the stay of all discovery in the Litigation, pending Final Approval of the Settlement by the Court.

### B. Interpretation of the Agreement.

This Agreement constitutes the entire agreement between Named Plaintiff and Defendant. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other written or oral representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Agreement, the Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. The Agreement will be interpreted and enforced under the laws of the State of California, both in its procedural and substantive aspects, without regard to its conflict of laws provisions. Any claim arising out of or relating to the Agreement, or the subject matter hereof, will be resolved solely and exclusively in the United States District Court, Central District of California, and Named Plaintiff and Defendant hereby consent to the personal jurisdiction of the Court over them solely in connection therewith. Named Plaintiff, on her own behalf and on behalf of the Settlement Class, and Defendant participated in the negotiation and drafting of this Agreement and had available to

them the advice and assistance of independent counsel.  As such, neither Named Plaintiff nor Defendant may claim that any ambiguity in this Agreement should be construed against the other.   The terms and conditions of this Agreement constitute the exclusive and final understanding and expression of all agreements between Named Plaintiff and Defendant with respect to the Settlement of the Litigation.  The Agreement may be modified only by a writing signed by the original signatories and approved by the Court.

**C.      Further Cooperation.**

The Parties and their respective attorneys shall proceed diligently to prepare and execute all documents, to seek the necessary approvals from the Court, and to do all things reasonably necessary or convenient to consummate the Agreement as expeditiously as possible.

**D.      Confidentiality of Documents.**

After the expiration of any appeals period, Named Plaintiff, the Settlement Administrator, and Class Counsel shall maintain the confidentiality of all documents, deposition transcripts, written discovery, declarations and other information obtained in the lawsuit, unless necessary for appeal or such documents are ordered to be disclosed by the Court or by a subpoena.

**E.      Counterparts.**

The Agreement may be executed in one or more actual or non-original counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.  Additionally, signatures delivered via facsimile or electronic transmission shall have the same force, validity and effect as the originals thereof.

**F.      Authority.**

Each individual signing below warrants that he or she has the authority to execute this Agreement on behalf of the party for whom or which that individual signs.

**G.      No Third Party Beneficiaries.**

Named Plaintiff, members of the Settlement Class, and Defendant are direct beneficiaries of this Agreement, and there are no third party beneficiaries.

///

FP 37641713.1

**H.    Force Majeure.**

The failure of any party to perform any of its obligations hereunder shall not subject such party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by acts of God, fires, accidents, earthquakes, other natural disasters, explosions, floods, wars, interruptions or delays in transportation, power outages, labor disputes or shortages, shortages of material or supplies, governmental laws, restrictions, rules or regulations, sabotage, terrorist acts, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such party.

**I.    Deadlines Falling on Weekends or Holidays.**

To the extent that any deadline set forth in this Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

**J.    Severability.**

In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way effect any other provision if Defense Counsel and Class Counsel, on behalf of the Parties and the Settlement Class, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

**K.    Right to Terminate Settlement**

If five percent (5%) or more members of the Settlement Class members exercise their rights to exclude themselves and opt out of the Settlement, Defendant may, in its sole discretion, unilaterally withdraw from and terminate the Settlement no later than five (5) days prior to the date of the Final Approval Hearing.  In the event of Defendant's withdrawal, no party may use the fact that the Parties agreed to the Resolution for any reason.  Moreover, in the event that Defendant elects to terminate this Settlement, Defendant shall pay all of the Administrative Costs incurred by the Settlement Administrator up to that point.

///

///

**L.    Successors and Assigns**

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

**M.    Non-Approval of Settlement**

In the event that this Settlement is not granted final approval, this Agreement shall be deemed void *ab initio* and the Parties shall be returned to their respective positions as though this Agreement was never executed, including with respect to any releases of claims.

**N.    Jurisdiction of the Court and Venue**

The Parties agree that this Settlement Agreement shall be enforceable by the Court, and the Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith.  The Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Settlement Agreement and all orders and judgments entered in connection therewith.  Any adjudicated dispute regarding the interpretation or validity of or otherwise arising out of this Settlement Agreement, or relating to the Action or the Released Claims, shall be subject to the exclusive jurisdiction of the United States District Court, Central District of California, and Named Plaintiff, Class Members, and Defendant agree to submit to the personal and exclusive jurisdiction and venue of this courts.

Dated:  November 24, 2020

**NAMED PLAINTIFF**:

DEBORAH OCHINERO

12/3/2020
Dated:  ~~November ____, 2020~~

**DEFENDANT:**

Robert Brown

LADERA LENDING, INC.
By: Robert Brown

**APPROVED AS TO FORM:**

FP 37641713.1

1   Dated:  November 25 , 2020          **THERMAN BUCK LLP**

2

3                                       By: _____
                                           JOSHUA BUCK, ESQ.
4                                          Attorneys for Plaintiff
                                           DEBORAH OCHINERO

5   Dated:  November 23 , 2020          **STEPHAN ZOURAS, LLP**

6
                                            *James B. Zouras*
7                                       By: _____
                                            FE28C95B9D2346F
                                           JAMES B. ZOURAS, ESQ.
8                                          Attorneys for Plaintiff
                                           DEBORAH OCHINERO

9   Dated:  November 30 , 2020          **FISHER & PHILLIPS LLP**

10

11                                      By: _____
                                           TODD B. SCHERWIN
12                                         SHAUN J. VOIGT
                                           Attorneys for Defendant
13                                         LADERA LENDING, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FP 37641713.1

# EXHIBIT C

# EXHIBIT C

### NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT
### AND FINAL HEARING DATE

**(*Ochinero v. Ladera Lending, Inc.*, United States District Court for the Central District of California, Case No. 8:19-cv-01136-JVS-ADS)**

**YOUR LEGAL RIGHTS MAY BE AFFECTED WHETHER YOU ACT OR DO NOT ACT. PLEASE READ THIS NOTICE CAREFULLY.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Do Nothing and Receive a Payment** | To receive a cash payment from the Settlement, you do **not** have to do anything.<br><br>**Your estimated Settlement Share is: $«Est.SettAmt».See the explanation below.**<br><br>After final approval by the Court, the payment will be mailed to you at the same address as this Class Notice. If your address has changed, please notify the Settlement Administrator as explained below. In exchange for the settlement payment, you will release claims against the Defendant as detailed below. |
| **Exclude Yourself** | If you wish to exclude yourself from the Settlement, you must send a written request for exclusion to the Settlement Administrator as provided below. If you request exclusion, you will receive **no money from the Settlement.**<br><br>Instructions are set forth below. |
| **Object** | You may write to the Court about why you do not like the settlement.<br><br>Directions are provided below. |

## I.      WHY DID I GET THIS NOTICE?

A proposed class action settlement (the "Settlement") of this lawsuit pending in the United States District Court for the Central District of California (the "Court") has been reached between Plaintiff Deborah Ochinero ("Plaintiff") and Defendant Ladera Lending, Inc ("Defendant"). The Court has granted preliminary approval of this Settlement. **You may be entitled to receive some money from this Settlement.**

**You have received this Class Notice because you have been identified as a member of the Class, which is defined as:**

> All current and former employees of Defendant who worked for Defendant as loan officers within the State of California at any time within the Class Period.

The "Class Period" is the period of time running from May 31 2018, and ending on [date of preliminary approval].

This Class Notice explains the lawsuit, the Settlement, and your legal rights. It is important that you read this Notice carefully as your rights may be affected by the Settlement.

1

## II.    WHAT IS THIS CLASS ACTION LAWSUIT ABOUT?

Plaintiff filed the class and collective action complaint against Defendant in the United States District Court, Central District of California, on June 7, 2019. Plaintiff's complaint asserted seven (7) causes of action for violations of federal and California State wage and hour laws, including: (1) Failure to Pay Overtime Compensation; (2) Failure to Provide Minimum Wages; (3) Failure to Provide Rest Breaks; (4) Failure to Provide Accurate Wage Statements; (5) Waiting Time Penalties; (6) Unfair Business Practices; and (7) Violations of the California Labor Code Private Attorneys General Act, Cal. Labor Code §§ 2698 Et Seq. On

The Action generally involves claims that Defendant Ladera Lending Inc.:

- Failed to properly pay hourly employees for overtime
- Failed to provide hourly employees with proper meal and rest breaks
- Failed to provide proper itemized wage statements to hourly employees
- Failed to provide hourly employees with all earned wages at the end of their employment

On March 12, 2020, the Parties participated in an all-day mediation with Michael Loeb, a respected mediator of wage and hour class actions, that ultimately resulted in a tentative settlement of the Litigation, memorialized in a Memorandum of Understanding, subject to certain contingencies and the approval of the Court, along with finalization of a formal Stipulation for Settlement. The Court granted preliminary approval of the Settlement on [date]. At that time, the Court also preliminarily approved the Plaintiff to serve as the Class Representative, and Mark R. Thierman and Joshua D. Buck of Thierman Buck LLP, and James B. Zouras and Ryan F. Stephan of Stephan Zouras, LLP, to serve as Class Counsel.

Defendant denies that it did anything wrong and asserts that it has fully complied with all employment and labor laws. Defendant has entered into the Settlement solely for the purpose of resolving the Action.

## III.    WHAT DOES THE SETTLEMENT PROVIDE?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at **INSERT**, by contacting class counsel at info@thiermanbuck.com or (775) 284-1500, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at http://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Central District of California located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.

Gross Settlement Amount. Defendant has agreed to pay an "all in" amount of Four-Hundred Eighty-Five Thousand Dollars ($485,000) (the "Gross Settlement Amount") to fund the settlement. The Gross Settlement Amount includes the payment of all Settlement Shares to Participating Class Members, Class Counsel's attorneys' fees and costs, the expenses of the Settlement Administrator, and the Class Representative Service Payment to the Plaintiff.

After the Judgment becomes Final, Defendant will pay the Gross Settlement Amount by depositing the money with the Settlement Administrator.

Amounts to be Paid From the Gross Settlement Amount. The Settlement provides for certain payments to be

made from the Gross Settlement Amount, which will be subject to final Court approval, and which will be deducted from the Gross Settlement Amount before settlement payments are made to Class Members, as follows:

Settlement Administration Expenses. Payment to the Settlement Administrator, estimated not to exceed $12,000.00, for expenses, including expenses of sending this Class Notice, processing opt outs, and distributing settlement payments.

Attorneys' Fees and Costs. Payment to Class Counsel of an award of a Class Counsel Fees Payment of no more than $161,166 (1/3 of the Gross Settlement Amount), and a Class Counsel Costs and Expenses Payment for all expenses incurred as documented in Class Counsel's billing records, both subject to Court approval. Class Counsel has been prosecuting the Action on behalf of Plaintiff and the Class on a contingency fee basis (that is, without being paid any money to date) and has been paying all litigation costs and expenses.

Class Representative Service Payment. Class Representative Service Payment of up to $18,000.00 to the Plaintiff, or such lesser amount as may be approved by the Court, to compensate her for services on behalf of the Class in initiating and prosecuting the Action, and for the risks she undertook.

Calculation of Payments to Participating Class Members. After all the above payments of the court- approved Class Counsel Fees Payment, Class Counsel Costs and Expenses Payment, the Class Representative Service Payments, and the Settlement Administration Expenses are deducted from the Gross Settlement Amount, the remaining portion, called the "Net Settlement Amount," shall be distributed to class members who do **not** request exclusion ("Participating Class Members"). The Settlement Share for each Participating Class Member will be calculated by determining the total number of recorded hours worked by each Settlement Class Member during the Class Period in a non-exempt position ("Individual Total Hours Worked") from Defendant's records. The sum of all Settlement Class Members' Individual Total Hours Worked shall be the "Aggregate Hours Worked" by the Settlement Class Members. The amount of the Class Member Allocation shall be divided by the Aggregate Hours Worked to yield the "Per Hour Rate." Each Settlement Class Member's Individual Payment Amount shall be the product of their Individual total Hours Worked multiplied by the Per Hour Rate.

**If the Settlement is approved by the Court, you will automatically be mailed a check for your Settlement Share to the same address as this Class Notice. You do not have to do anything to receive a payment.** If your address has changed, you must contact the Settlement Administrator to inform them of your correct address to insure you receive your payment.

Tax Matters. Neither Class Counsel nor Defendant's counsel intend anything contained in this Settlement to constitute advice regarding taxes or taxability. You may wish to consult a tax advisor concerning the tax consequences of the payments received under the Settlement.

Conditions of Settlement. This Settlement is conditioned upon the Court entering an order granting final approval of the Settlement and entering judgment.

## IV.    WHAT AM I GIVING UP IN EXCHANGE FOR THE SETTLEMENT PAYMENT?

Released Class Claims. In exchange for the settlement payment being provided, each member of the Class who does not submit a request for exclusion (discussed in Section VII below) will release and discharge Defendant and the Release Parties for all claims arising or accruing during the Class Period that were pleaded in the Complaint or that could have been pleaded in the Action, based on the factual allegations contained in the Complaint.

Accordingly, the Released Claims include all claims that Defendant: (1) failed to pay all minimum wages and regular wages owed (including without limitation Labor Code §§ 1182.12, 1194, 1197 & 1198, et seq.); (b) failed to pay all overtime and double-time wages owed (including without limitation Labor Code §§ 510, 1194, 1197.1, and 1198); (c) failed to provide meal periods, or premium pay for non-compliant meal periods (including without limitation Labor Code §§ 226.7, 512(a) & 1198 et seq.); (d) failed to authorize and permit rest periods, or provide premium pay for non-compliant rest periods (including without limitation Labor Code §§ 226.7 & 1198 et seq.); (e) failed to provide accurate, itemized wage statements (including without limitation Labor Code §§ 226 and 226.3); (f) failed to timely pay wages upon separation of employment (including without limitation Labor Code §§ 201 & 202, et seq.); (g) utilized unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above (including without limitation Business & Professions Code §§ 17200, et seq.); (h) violated the Fair Labor Standards Act (FLSA) under the facts, claims, causes of action or legal theories described above; and (i) violated the California Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698, et seq. (hereinafter "PAGA") under the facts, claims, causes of action or legal theories described in the Litigation and above.

The Released Claims include all claims that could have been pleaded based on the factual allegations contained in the Complaint, such as: Defendant did not pay the Class for all "hours worked" under California law and the FLSA; Defendant did not pay the Class for all overtime hours worked and/or failed to compensate all overtime hours worked at a proper overtime rate of pay; Defendant did not properly include bonuses and other incentive compensation in the "regular rate" for wage payment purposes; Defendant interrupted employees' meal and rest breaks, provided short or late meal or rest breaks and/or did not provide the opportunity to take meal or rest breaks; Defendant did not specify an accurate number of hours worked or an accurate regular rate on wage statements and/or did not provide other required wage statement information; and Defendant did not pay all final wages due to employees upon separation of employment, given additional wages due and owing in light of the Complaint's off-the-clock, overtime, regular rate and/or meal/rest break claims.

By participating in the Action and accepting the settlement payment, you will not be able to make a claim or file a lawsuit for any of the claims above.

A copy of the full release language that you are agreeing to under the Settlement can be found in paragraph 10 of the Agreement which can be found online **INSERT.**

<u>Conditions of Settlement</u>. This Settlement is conditioned upon the Court entering an order granting final approval of the Settlement and entering judgment.

## V.      HOW MUCH WILL MY PAYMENT BE?

**Defendant's records reflect that you worked «pro rata share of workweeks» workweeks during the Class Period (May 31, 2018 to <Preliminary Approval Date>).**

**Based on this information, your estimated Settlement Share is $«Est.SettAmt».**

If you wish to challenge the information set forth above, then you must submit a written, signed dispute challenging the information along with supporting documents, to the Settlement Administrator at the address provided in this Class Notice no later than <date 45 days after mailing of class notice>.

## VI.      HOW CAN I GET A PAYMENT?

**To get money from the settlement, you do not have to do anything.** A check for your settlement payment will be mailed automatically to the same address as this Class Notice. If your address is incorrect or has

changed, you must notify the Settlement Administrator. The Settlement Administrator is: Simpluris, (###) ###-####.

The Court will hold a hearing on <date> to decide whether to approve the Settlement. If the Court approves the Settlement and there are no objections or appeals, payments will be mailed within a few months after this hearing. If there are objections or appeals, resolving them can take time, perhaps more than a year. Please be patient.

## VII.    WHAT IF I DON'T WANT TO BE A PART OF THE SETTLEMENT?

If you do not wish to participate in the Settlement, you may exclude yourself from the Settlement or "opt out." **If you opt out, you will receive NO money from the Settlement, and you will not be bound by its terms.**

To opt out, you must submit to the Settlement Administrator, by First Class Mail, a written, signed and dated request for exclusion postmarked no later than <45 days after mailing of class notice>.The address for the Settlement Administrator is Ochinero v. Ladera Lending, Inc., c/o Simpluris, <mailing address>. The request for exclusion must state in substance: "I have read the Class Notice and I wish to opt out of the class action and settlement of the case *Ochinero v. Ladera Lending, Inc.*, Case No. 8:19-cv-01136-JVS-ADS." The request for exclusion must contain your name, address, signature and the last four digits of your Social Security Number for verification purposes. The request for exclusion must be signed by you. No other person may opt out for a member of the Class.

## VIII.   HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT?

Any Class Member, who has not opted out and believes that the Settlement should not be finally approved by the Court for any reason, may object to the proposed Settlement. Objections must be in writing and state the Class Member's name, current address, telephone number, and describe why you believe the Settlement is unfair and whether you intend to appear at the final approval hearing. All objections or other correspondence must also state the name and number of the case, which is *Ochinero v. Ladera Lending, Inc.,* District Court for the Central District of California, Case No. 8:19-cv-01136-JVS-ADS.

To object to the Settlement, you must not opt out. If the Court approves the Settlement, you will be bound by the terms of the Settlement in the same way as Class Members who do not object. Any Class Member who does not object in the manner provided in this Class Notice shall have waived any objection to the Settlement, whether by appeal or otherwise.

If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Ochinero v. Ladera Lending, Inc.,* Case No. 8:19-cv-01136-JVS-ADS), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Central District of California, 411 West Fourth Street, Room 1053, Santa Ana, CA 92701, or by filing them in person at any location of the United States District Court for the Central District of California, and (c) be filed or postmarked on or before <**45 days following mailing of the Class Notice**>.

The addresses for the Parties' Counsel are as follows:

5

**Class Counsel:**
Mark Thierman
Joshua Buck
Thierman Buck LLP
7287 Lakeside Drive
Reno, NV 89511
Tel: 775.284.1500 / Fax: 775.703.5027
Email: info@thiermanbuck.com

James B. Zouras
Ryan F. Stephan
Stephan Zouras LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: 312.233.1550 / Fax: 312.233.1560

**Counsel for Defendant:**
Shaun J. Voigt
Fisher & Phillips LLP
444 South Flower Street, Suite 1500
Los Angeles, CA 90071
Tel: 213.330.4500 / Fax: 213.330.4501

## IX. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a Final Approval Hearing at <time> a.m. on <date>, in Courtroom **INSERT** before **INSERT**. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The purpose of this hearing is for the Court to determine whether to grant final approval to the Settlement. If there are objections, the Court will consider them. The Court will listen to people who have made a timely written request to speak at the hearing. This hearing may be rescheduled by the Court without further notice to you. You may check the settlement website identified in Section III above or the Court's PACER site to confirm that the date has not been changed. **You are not required to attend** the Final Approval Hearing, although any Class Member is welcome to attend the hearing.

## X. HOW DO I GET MORE INFORMATION ABOUT THE SETTLEMENT?

You may call the Settlement Administrator at <phone> or write to *Ochinero v. Ladera Lending Inc.* Settlement Administrator, *c/o* Simpluris <address>; or contact Class Counsel at <phone>.

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You may receive a copy of the Settlement Agreement, the Final Judgment or other Settlement documents by writing to Class Counsel, or by going online to **INSERT WEBSITE.**

**PLEASE <u>DO NOT</u> CALL THE COURT ABOUT THIS NOTICE.**

<u>IMPORTANT:</u>

• You must inform the Settlement Administrator of any change of address to ensure receipt of your settlement payment.

• Settlement checks will be null and void 365 days after issuance if not deposited or cashed. In such event, the Settlement Administrator shall pay all funds from such uncashed checks *cy* pres to the National Employment Law Law Project: https://www.nelp.org/. If your check is lost or misplaced, you should contact the Settlement Administrator immediately to request a replacement.

6

# EXHIBIT D

# EXHIBIT D

7:44 PM

01/06/21

## Thierman Buck LLP
## Job Actual Cost Detail
### December 1, 2014 through December 28, 2020

| Date | Source Name | Memo | Account | Amount | Balance |
|------|-------------|------|---------|--------|---------|
| **Ladera Lending adv Ochinero** | | | | | |
| 06/29/2019 | FedEx | | 5092-3 Postage | 28.32 | 28.32 |
| 06/29/2019 | FedEx | | 5092-3 Postage | 28.32 | 56.64 |
| 07/12/2019 | Southwest Airlines | Josh B | 5092-11 Travel | 535.96 | 592.60 |
| 07/25/2019 | One Legal | Statement dat... | 5092-7 Filings | 65.00 | 657.60 |
| 08/08/2019 | Southwest Airlines | Josh B | 5092-11 Travel | -535.96 | 121.64 |
| 08/11/2019 | One Legal | Account 0003... | 5092-7 Filings | 227.50 | 349.14 |
| 10/10/2019 | One Legal | Account 0003... | 5092-7 Filings | 37.00 | 386.14 |
| 12/12/2019 | JAMS | | 5092-17 Mediation | 6,450.00 | 6,836.14 |
| 03/05/2020 | Southwest Airlines | Josh B | 5092-11 Travel | 274.98 | 7,111.12 |
| 03/12/2020 | Uber | Josh B | 5092-11 Travel | 30.00 | 7,141.12 |
| 03/12/2020 | Meals | Josh B | 5092-12 Meals | 21.68 | 7,162.80 |
| 03/12/2020 | Meals | Josh B | 5092-12 Meals | 4.83 | 7,167.63 |
| 03/12/2020 | Uber | Josh B | 5092-11 Travel | 27.55 | 7,195.18 |
| 03/12/2020 | Meals | Josh B and co... | 5092-12 Meals | 151.31 | 7,346.49 |
| 03/12/2020 | Reno-Tahoe Airport | Josh B | 5092-6 Parking | 25.00 | 7,371.49 |
| 03/12/2020 | Meals | Josh B | 5092-12 Meals | 13.02 | 7,384.51 |
| 03/13/2020 | Hotel | Josh B | 5092-11 Travel | 361.69 | 7,746.20 |
| 03/27/2020 | JTC Corporation | Invoice 200305 | 5092-15 Data Experts | 900.00 | 8,646.20 |
| 04/04/2020 | JAMS | Reference# 1... | 5092-17 Mediation | 346.26 | 8,992.46 |
| 04/04/2020 | Thomson Reuters - ... | Account 1000... | 5092-5 Westlaw Re... | 60.67 | 9,053.13 |
| | Total Ladera Lending adv Ochinero | | | 9,053.13 | 9,053.13 |
| **TOTAL** | | | | **9,053.13** | **9,053.13** |

**OCHINERO v. LADERA LENDING, INC.**

| Date | Activity | Total | Description |
|------|----------|-------|-------------|
| 10/1/2020 | Claims Administration | $6,178.00 | Proposed invoice from Simpluris for settlement class mailing. *NOT YET PAID* |
| 6/21/2019 | Postage | $0.50 | Postage period from 6/4/19 - 6/20/19. |
| 6/13/2019 | Pro Hac Vice | $30.00 | Check #4998 made payable to Clerk of the Supreme Court of IL for certificates of good standing for |
| 5/7/2019 | Research | $8.55 | Westlaw research for Feb 2019 |
| 7/1/2019 | Research | $25.14 | Westlaw research for June 2019 |
| 7/30/2019 | Research | $8.33 | Westlaw research for July 2019 |
| 10/21/2019 | Research | $17.37 | Westlaw research for Aug, Sept 2019 |
| 12/16/2019 | Research | $8.81 | Westlaw research for Dec 2019 |
| 4/13/2020 | Research | $30.25 | Westlaw research for Q1 2020 |
| 4/25/2020 | Research | $1.10 | Q1 Pacer research |
| 9/8/2020 | Research | $8.11 | Westlaw research for April |
| 1/15/2020 | Travel | $231.96 | JBZ's flight to LA for mediation from 2/09/20 - 2/11/20 *Feb Mediation was cancelled & we had to put this flight's credit towards the March Mediation, bu fee.* |
| 2/26/2020 | Travel | $340.00 | JBZ's flight to LA for mediation from 2/09/20 - 2/11/20 *Feb Mediation was cancelled & we had to put this flight's credit towards the March Mediation, bu fee. $140 + $200 = $340* |
| 2/26/2020 | Travel | $614.61 | JBZ's hotel in Los Angeles for mediation on 3/12/20 |
| 3/16/2020 | Travel | $67.56 | JBZ's taxi travel in NY for mediation on 3/11/20 |
| 3/16/2020 | Travel | $66.00 | JBZ's Limousine travel in NY for mediation on 3/13/20 |
| 3/16/2020 | Travel | $13.99 | JBZ's wifi purchase for flight to NY on 3/13/20 |
| 3/18/2020 | Travel | $121.65 | JBZ's breakfast and lunch meetings in NY for mediation from 3/12/20 - 3/13/20 |
| **TOTAL:** | | **$7,771.93** | |