Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com

James B. Zouras, Pro Hoc Vice
Ryan F. Stephan, Pro Hoc Vice
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312 233 1550
312 233 1560 *f*
Email: jzouras@stephanzouras.com
Email: rstephan@stephanzouras.com

*Attorneys for Plaintiff, the general public, and all others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| DEBORAH OCHINERO, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>LADERA LENDING, INC., and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 8:19-cv-01136-JVS-ADS<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>DATE: July 19, 2021<br>TIME: 1:30 p.m.<br>JUDGE: Hon. James V. Selna<br>CTRM: 10C<br><br>COMPLAINT FILED: June 21, 2019 |

1.

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 19, 2021, or as soon thereafter as the matter may be heard by the Honorable James V. Selna of the United States District Court of the Central District of California, located at 411 West 4th Street, Courtroom 10C, 1053 Santa Ana, CA 92701-4516, Plaintiff will and hereby does move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act (FLSA) for an order:

(1) Finally approving a proposed collective and class action settlement with Defendant Ladera Lending, Inc.;

(2) Finally certifying the Class for purposes of settlement;

(3) Approving the named-Plaintiff Service Award;

(4) Approving Class Counsel's Fees and Costs; and

(5) Approving the Costs of the Settlement Administrator.

This motion is based on this Notice of Motion and Motion for Final Approval of Settlement with Defendants, the following memorandum of points and authorities, the settlement agreement (ECF No. 48-1 at pp. 13-39), the Declaration of named-Plaintiff Deborah Ochinero (ECF No. 52-3), the Declarations of Class Counsel (ECF Nos. 48-1, 53-1, 53-2), the pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: June 21, 2021

/s/Joshua D. Buck              .
JOSHUA BUCK
THIERMAN BUCK LLP

JAMES B. ZOURAS
STEPHAN ZOURAS, LLP

*Attorneys for Plaintiff, the general public, and all others similarly situated*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1
II.  BACKGROUND ................................................................................................................ 2
    A.   The Settlement Class.............................................................................................. 2
    B.   The Settlement Consideration................................................................................ 2
    C.   Release of Claims .................................................................................................. 3
    D.   The Notice Process ................................................................................................ 4
    E.   Settlement Allocation Plan .................................................................................... 5
    F.   Service Award/General Release Payment to Plaintiff ......................................... 6
    G.   Class Counsel Fees and Costs................................................................................ 6
    H.   Claims Administrator Fees .................................................................................... 6
III. ARGUMENT ..................................................................................................................... 7
    A.   The settlement classes should be certified. .......................................................... 7
    B.   Plaintiff has complied with Rule 23(c) notice requirements. ............................... 7
    C.   Final Approval of the Settlement Should Be Granted: The Settlement Is Fair, Adequate and Reasonable. ...................................................................................... 8
        1.   The strength of Plaintiff's case supports final approval. ..................................... 9
        2.   The risk, expense, complexity, and duration of further litigation supports final approval. ............................................................................................................... 10
        3.   The risk of maintaining class action status through trial. .................................. 11
        4.   The amount offered in settlement supports final approval. ............................... 11
        5.   The extent of discovery completed and stage of proceedings supports........................... 12 final approval. ..................................................................................................... 12
        6.   The experience and views of class counsel support approval. .......................... 12
        7.   The non-presence of a government participant supports final approval. ......... 13
        8.   The reaction of the classes supports final approval. ......................................... 13
    D.   The Named-Plaintiff Service Award Should Be Approved............................... 13
    E.   Class Counsel's Fees and Costs Should Be Approved ...................................... 13
    F.   The Claims Administrator's Fees and Costs Should Be Approved.................. 14
IV. THE PROPOSED PLAN OF ALLOCATION IS FAIR ....................................... 14
V.  CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ................................................................................................................................ 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ....................................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ............................... 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951, at *216 (N.D. Cal. Jan. 28, 2016) ................................................................................................. 14

*In re Omnivision Tech.*, 559 F. Supp. 2d at 1045 (N.D. Cal. 2008) .................................................. 14

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ....................................................... 8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). ...... 9

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ........................................... 11

*Officers for Justice*, 688 F.2d at 625 ................................................................................................. 9

*Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ........................................................ 8

*Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478, 2016 U.S. Dist. LEXIS 83937, at *20 (N.D. Cal. June 28, 2016) ...................................................................................................................................... 13

*See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ............................. 12

*See Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ................................................................................................................................. 12

*See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ............................... 12

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ................................................................... 7

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) ............................................................. 8

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ................................................. 8

*Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at *48 (N.D. Cal. Mar. 24, 2017) .............................................................................................................................................. 13

**Statutes**

Business & Professions Code §§ 17200, *et seq.* ................................................................................ 3

California Labor Code Private Attorneys General Act of 2004 ......................................................... 3

Labor Code §§ 1182.12, 1194, 1197 & 1198, et seq. ........................................................................ 3

Labor Code §§ 201 & 202, et seq. ...................................................................................................... 3

| 1 | Labor Code §§ 226 and 226.3 .................................................................................................. 3 |
| 2 | Labor Code §§ 226.7 & 1198 et seq. ........................................................................................ 3 |
| 3 | Labor Code §§ 226.7, 512(a) & 1198 et seq. ............................................................................ 3 |
| 4 | Labor Code §§ 2698, *et seq.* .................................................................................................... 4 |
| 5 | Labor Code §§ 510, 1194, 1197.1, and 1198 ............................................................................. 3 |

**Rules**

| 7 | Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 7 |
| 8 | Rule 23 of the Federal Rules of Civil Procedure .................................................................. 1, 2 |

iii.
NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiff Deborah Ochinero seeks final approval of this non-reversionary $485,000 collective and class action settlement ("Settlement")[1] pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Plaintiff and Defendant (collectively "the Parties") have complied with all the terms of the Court's order granting preliminary approval. *See* ECF No. 51. Settlement Notices were distributed by the Settlement Administrator, Simpluris, pursuant to this Court's Order granting preliminary approval. *See* ECF No. 51. After receiving the Notice packets and class contact information, Simpluris mailed the Notice to 135 class members. Ultimately, only one notice was returned as undeliverable. No class members sought to be excluded and no one has objected to the Settlement. *See* Declaration of Claims Administrator Meagan Brunner ("Brunner Dec.") at ¶ 14.

The Settlement is the product of a voluminous exchange of data and a lengthy negotiation process that resulted in the Parties accepting a proposal made by experienced California wage-hour mediator Michael Loeb, Esq. The Total Settlement Amount of $485,000 represents a recovery of approximately 59% of the total potential exposure in this action.[2] The Net Settlement Amount available for distribution to all class members is $242,159.00, which is based upon the Total Settlement Amount minus (i) $18,000 named-Plaintiff service award and general release payment, (ii) up to $161,666 in attorneys' fees, (iii) $20,000 in out-of-pocket expenses, (iv) $7,300 in third party settlement administrator fees, and (v) $36,375 PAGA - LWDA. *See* Brunner Dec. at ¶ 16.

---

[1] The Settlement was filed as an Exhibit to the Declaration of Joshua D. Buck in support of Plaintiff's motion for preliminary approval of the collective and class action settlement. The Settlement can be found at ECF No. 48-1, pp. 13-39.

[2] As set forth fully in Plaintiff's motion for preliminary approval of the Settlement, *see* ECF No. 48, Plaintiff estimates that Defendant's total exposure is approximately $828,790.53 based on Plaintiff's rest break violations and associated penalties. *Id.* at 15.

1.

The Settlement is non-reversionary, meaning that all of the Net Settlement Amount will be paid to each and every class member, with the sole exception of the class member whose current address could not be located notwithstanding a diligent search. Individual class member payments will be calculated by comparing the total number of weeks worked by the entire class with the weeks worked by each individual class member to determine each class member's pro rata share from May 31, 2018 up to the date this Court entered preliminary approval ("Class Period"). Settlement at ¶ X, XII. The average estimated settlement amount for each class member is $1,793.77, and the highest estimated payment is $4,518.30. *See* Brunner at ¶ 17. For all these reasons, and for those set forth more fully below, Plaintiff submits that the Settlement should be final approved as a fair, adequate and reasonable resolution of the litigation.

## II.    BACKGROUND

This Court is familiar with the allegations in this case, which Plaintiff does not repeat here. Plaintiff included a detailed discussion of the procedural history and their efforts in litigating this case in the motion for preliminary approval (*see* ECF No. 48).

### A.    The Settlement Class

The Court preliminarily certified the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure ("Settlement Class"):

> All current and former employees of Defendant who worked for Defendant as loan officers within the State of California at any time within the Class Period.

Settlement at ¶ X. Plaintiff seeks that this Settlement Class be certified through final approval.

### B.    The Settlement Consideration

The Settlement provides a Total Settlement Amount of $485,000. Settlement at ¶ W. The Net Settlement Amount available for distribution to all class members is $242,159.00, which is based upon the Total Settlement Amount minus (i) $18,000 named-Plaintiff service award and

general release payment, (ii) up to $161,666 in attorneys' fees, (iii) $20,000 in out-of-pocket expenses, (iv) $7,300 in third party settlement administrator fees, and (v) $36,375 PAGA - LWDA. *See* Brunner Dec. at ¶ 16.

### C. Release of Claims

Once the Settlement is final and effective, the named Plaintiff and settlement class members who have not opted-out will release all federal and state law claims for damages against Defendant that are based on the factual allegations asserted in the Complaint. The release of claims specifically states as follows:

> Upon the Date of Final Approval, Named Plaintiff and all members of the Settlement Class, except those that make a valid and timely request to be excluded from the Settlement Class and Settlement, waive, release, discharge, and promise never to assert in any forum the following claims against Defendant, its past and present officers, directors, shareholders, unit holders, managers, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, and its respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys from all claims, demands, rights, liabilities and causes of action that were pled in any of the complaints in the Litigation, or which could have been pled in any of the complaints in the Litigation based on the factual allegations therein, that arose during the Class Period with respect to the following claims: (a) failure to pay all minimum wages and regular wages owed (including without limitation Labor Code §§ 1182.12, 1194, 1197 & 1198, et seq.); (b) failure to pay all overtime and double-time wages owed (including without limitation Labor Code §§ 510, 1194, 1197.1, and 1198); (c) failure to provide meal periods, or premium pay for non-compliant meal periods (including without limitation Labor Code §§ 226.7, 512(a) & 1198 et seq.); (d) failure to authorize and permit rest periods, or provide premium pay for non-complaint rest periods (including without limitation Labor Code §§ 226.7 & 1198 et seq.); (e) failure to provide accurate, itemized wage statements (including without limitation Labor Code §§ 226 and 226.3); (f) failure to timely pay wages upon separation of employment (including without limitation Labor Code §§ 201 & 202, et seq.); (g) all claims for unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above (including without limitation Business & Professions Code §§ 17200, *et seq.*); (h) all claims under the Fair Labor Standards Act (FLSA) that could have been premised on the facts, claims, causes of action or legal theories described above; and (i) all claims under California Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698,

*et seq.* (hereinafter "PAGA") that could have been premised on the facts, claims, causes of action or legal theories described in the Litigation and above.

Settlement at ¶ VII. The released parties are Defendant Ladera Lending, Inc., and each of its respective subsidiaries, affiliates, predecessors or successors in interest, officers, directors, shareholders, employees, attorneys, agents, assigns, insurers, and re-insurers. *Id.*

### D. The Notice Process

On or before February 26, 2021, Simpluris received the Court-approved Class Notice from Class Counsel. Pursuant to the Court's order granting preliminary approval, the Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action. The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. *See* Brunner Dec. at ¶ 6.

On April 6, 2021, Counsel for Defendant provided Simpluris with a mailing list containing the names, Social Security numbers, last known addresses, and number of workweeks during the Class Period based on dates of employment. The Class List contained data for 135 individuals identified as Class Members. Brunner Dec. at ¶ 3. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. Brunner Dec. at ¶ 4. On April 13, 2021, Counsel for Defendant provided Simpluris with a data list containing the email addresses for 69 Class Members. *See* Brunner Dec. at ¶ 5.

On April 20, 2021, Simpluris caused the Notice Packet to be sent via email to 69 Class Members. *See* Brunner Dec. at ¶ 7.

On April 20, 2021, after updating the mailing addresses through the NCOA, Simpluris timely mailed Notice Packets via First Class Mail to the 135 Class Members contained in the Class List. *See* Brunner Dec. at ¶ 8. If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. Simpluris used the Class Member's name, previous address and Social Security Number to locate a current address. Through the advanced address searches, Simpluris was able to locate 5 updated addresses and Simpluris promptly mailed Notice Packets to those updated addresses. Ultimately, only one Class Member's Notice was undeliverable because Simpluris was unable to locate a current address. *See* Brunner Dec. at ¶ 9. No class members sought to be excluded from the Settlement. No individuals filed an "objection" to the Settlement.

On April 21, 2021, Simpluris notified the parties the Notice Packet mailed to the Class Members included a Response Deadline of June 11, 2021 instead of the correct deadline of June 19, 2021. Simpluris mailed a Correction Postcard to 135 Class Members. The Notice Packet emailed to the 69 Class Members included the correct response deadline. *See* Brunner Dec. at ¶ 10.

### E. Settlement Allocation Plan

The Settlement is non-reversionary, meaning that all of the Net Settlement Amount will be distributed. Individual class member estimated payments were calculated by dividing the Net Settlement Amount by the total number of Eligible Workweeks calculated for all members of the Settlement Class during the Class Period (the "Workweek Amount") and then multiplying the Workweek Amount by the number of Eligible Workweeks by the individual Class Member as by the Settlement Administrator, less any applicable withholding taxes. Settlement at ¶ XII. Individual

class member settlement payments that remain uncashed for 180 days after mailing of the payments will be transmitted to the Justice Gap Fund. *Id.*

### F.   Service Award/General Release Payment to Plaintiff

This Court is familiar with the work performed on behalf of the Class by Plaintiff Deborah Ochinero up to and including the work she performed in support of the motion for preliminary approval of the Settlement. *See* ECF No. 48. Ms. Ochinero has continued to take her duties as class representative seriously and has remained in contact with many class members since preliminary approval was granted. In total, Ms. Ochinero has expended in excess of 125 hours over the last three years on behalf of herself and other class members. *See* ECF 52-3

### G.   Class Counsel Fees and Costs

Shortly after the Court's order granting preliminary approval of the Settlement, Class Counsel filed their supplement to the motion for approval of Class Counsel Fees and Costs pursuant to Court Order. *See* ECF No. 51, 52, and 53. Pursuant to this Court's request, Class Counsel submitted complete time records for all the hours invested in this case on behalf of the Class. *See* ECF Nos. 53-1 and 53-2.

Not a single class member has objected to Class Counsel's requested fees and/or costs. The arguments in support of awarding $33^{1}/_{3}$% of the Settlement Amount, and the litigation costs actually expended in prosecuting this action, have been fully briefed and will not be repeated here. *See* ECF No. 52.

### H.   Claims Administrator Fees

Claims Administrator Simpluris, Inc., has completed its duties as the claims administrator in this case pursuant to the Court's order granting preliminary approval. Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and

anticipated future costs for completion of the administration, is $7,300.00. *See* Brunner Dec. at ¶ 18.

## III. ARGUMENT

Three steps must be satisfied for final approval of the Settlement Agreement. *First*, the Court must certify the settlement classes. *Second*, the Court must find that the classes received adequate notice under Federal Rule of Civil Procedure 23(c)(2)(B). *Third*, the Court must decide whether the Settlement Agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These requirements are all met.

### A. The settlement classes should be certified.

In the order granting preliminary approval, this provisionally certified a settlement class under Rule 23. *See* ECF No. 51. The same analysis applies here, so the Class should be certified for settlement purposes under Rule 23(e), for the same reasons set forth in Plaintiff's motion for preliminary approval of the Settlement Agreement. *See* ECF No. 48.

### B. Plaintiff has complied with Rule 23(c) notice requirements.

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions, and upon settlement, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

This Court approved the proposed class notice and notice program. As described in Section above, the Settlement Administrator appointed by the Court (Simpluris) implemented that program. Over 99.11% of the class members received notice, which far exceeds the constitutional requirement

for notice. The notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements. This notice complies with all of the requirements of Rule 23.

### C. Final Approval of the Settlement Should Be Granted: The Settlement Is Fair, Adequate and Reasonable.

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

All of these factors support approval of the Settlement Agreement.

### 1. The strength of Plaintiff's case supports final approval.

In assessing the strength of Plaintiff's case, the Court should not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 at 625 (9th Cir. 1982). Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The Court's assessment of the likelihood of success is "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (internal citations omitted).

Here, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. From Plaintiff's perspective, the Total Settlement Amount represents a 59% recovery of the total exposure that Defendant faced with respect to Plaintiff's strongest claim that Defendant's compensation plan failed to adequately compensate loan officers for their daily rest breaks. Plaintiff's expert on damages calculated the exposure of Plaintiff's rest break violations, together with other associated penalties, to be approximately $828,790.53 for the

Class Period of May 31, 2018 to the date of mediation in March 2020. The exposure calculation was based upon the employment data provided to Plaintiff and analyzed by Plaintiff's data expert prior to the mediation with Mediator Michael Loeb. ECF 48 at 15.

Plaintiff agreed to resolve her claims on her behalf and on behalf of the class at an estimated 59% recovery of the total potential for the following principal reasons. First, as with all settlements, a recovery at 59% the total potential recovery represents a relatively quick and certain payout for all members of the Class. Second, resolving the action as a total non-reversionary payout to all members of the Class takes away any risk that the action may not ultimately proceed to trial on a class-wide basis. By resolving the case on a class-wide basis, all class members will be receiving funds whereas there is significant risk that the amount paid to absent class members would be zero. This concern was particularly poignant here because of the existence of arbitration agreements with class action waivers. Third, the case was a highly disputed as to whether Defendant's compensation plan violated California law with respect to rest breaks and unpaid wages. *Id.* at 16.

In short, the class, liability, and damage issues in this case were all hotly contested. The Parties reached their Settlement following the exchange of numerous position statements, informal discovery, and with the assistance of Mediator Michael Loeb.

This factor supports final approval.

### 2. The risk, expense, complexity, and duration of further litigation supports final approval.

Federal and state hybrid wage and hour cases, such as this one, present unique challenges that support final approval. First, as this Court is aware, the cost of ongoing litigation can be significant. Plaintiff has retained counsel who are extremely experienced in employment wage-hour class action cases. *See* ECF Nos. 53-1 and 53-2. Class counsel has successfully pursued this litigation for the last two years by, on the one hand, seeking to engage Defendant in potential

settlement discussion and, on the other hand, developing a comprehensive litigation strategy to overcome a formidable litigation defense; not the least of which would have been efforts to enforce individual arbitration agreements. ECF 48 at 18.

Beyond the actual litigation costs that could potentially limit class member recoveries had this case proceeded, the risk, complexity and duration of further litigation supports early resolution. Class Counsel is counsel in other wage hour class action cases that have been litigated for almost a decade without any class member relief. The issues in those cases have reached the highest court in the United States and have been subject to countless legal challenges. *See* ECF 53-1. This action could be subject to similar legal and factual challenges that would potentially delay justice for years to come. The Settlement Agreement brings significant relief to the classes despite this ongoing risk. This factor also supports final approval of the Settlement Agreement.

### 3. The risk of maintaining class action status through trial.

The third factor, the risk of achieving and maintaining class action status through trial, also supports final approval of the settlements here. If the Settlement Agreement were not approved, plaintiffs would need to secure and maintain class certification through trial and any appeals. If the Rule 23 motion were denied, the putative class members would recover nothing. Once again, this factor supports final approval of the Settlement Agreement.

### 4. The amount offered in settlement supports final approval.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). The $485,000 Total Settlement Amount represents approximately 59% of the total potential damages that could have been recovered in this case if Plaintiff was ultimately successful on her claims. While certainly less than 100 cents on the dollar, the percentage recovered is significant because it provides quick and certain relief to 135 class

members. Indeed, the average estimated settlement amount for each class members is $1,793.77 and the highest estimated settlement amount is $4,518.30. Brunner Dec. at ¶ 17. This factor strongly weighs in favor of granting final approval.

### 5. The extent of discovery completed and stage of proceedings supports final approval.

The extent of the discovery conducted and the stage of the litigation are both indicators of counsel's familiarity with the case and of their having sufficient information to make an informed decision. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *See Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009). The parties here conducted extensive discovery, thoroughly testing the claims and defenses available in this case.

As explained in the motion for preliminary approval and Class Counsel fees and costs (see ECF Nos. 48 and 52), the Parties conducted significant informal discovery. Defendant provided thousands of pages of documents in response to Plaintiff's discovery requests and, most importantly, provided data (payroll, punch) prior to the Parties' mediation efforts. In sum, the Parties reached this Settlement through arm's-length bargaining, after sufficient investigation and discovery and intensive arms-length negotiating overseen by an experienced and respected mediator with an expertise in wage-and-hour litigation. ECF 48 at 13.

The extent of relevant discovery strongly favors final approval of the Settlement Agreement.

### 6. The experience and views of class counsel support approval.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation and internal quotation marks omitted). Here, plaintiffs' counsel—wage and hour class action lawyers

with many years of experience—support the settlement. *See* ECF Nos. 53-1 and 53-2. This factor again weighs in support of final approval.

### 7. The non-presence of a government participant supports final approval.

"No governmental entity participated in this matter; this factor, therefore, is irrelevant to the Court's analysis." *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at *48 (N.D. Cal. Mar. 24, 2017). *Accord*, *Sciortino v. PepsiCo, Inc*., No. 14-cv-00478, 2016 U.S. Dist. LEXIS 83937, at *20 (N.D. Cal. June 28, 2016) ("Because there is no government participant in this case, this factor is inapplicable.").

### 8. The reaction of the classes supports final approval.

No class members sought to be excluded from the Settlement, nor did any individuals file an "objection". This factor supports final approval.

### D. The Named-Plaintiff Service Award Should Be Approved

Named-Plaintiff Ochinero complied with this Court's request to submit a declaration in support of her request for a service award. *See* ECF Nos. 52 and 52-3. As set forth in the prior briefing on this issue, the service award allowed under the Settlement should be approved given Ms. Ochinero's work that was performed on behalf of the Class and the risks that she undertook in pursuing this litigation. *See, e.g.*, *Glass v. UBS Financial Services, Inc.,* 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (approving, over objection, $25,000 enhancements to each of four named plaintiffs for seven months of litigation).

### E. Class Counsel's Fees and Costs Should Be Approved

Class Counsel complied with this Court's request to submit a declaration in support of their request for a fees and costs. *See* ECF Nos. 52, 53-1, and 53-2. As set forth in the prior briefing on this issue, the attorneys fees and costs allowed under the Settlement should be approved given that

Class Counsel is being compensated less than their hourly lodestar (i.e., the attorneys' fees requested under the Settlement represent a negative .8 multiplier on the hours expended in this case) and that Class Counsel agreed to litigate this case on a pure contingency fee basis. *See id.* Accordingly, the full attorneys' fees and costs requested should be approved.

### F. The Claims Administrator's Fees and Costs Should Be Approved

Claims Administrator Simpluris, Inc., has incurred $7,300 in costs associated with the administration of this settlement. This is substantially less than the $12,000 that was allocated for administration fees under the settlement and that was disclosed to the Class. The lower fees requested are therefore reasonable and should be approved.

## IV. THE PROPOSED PLAN OF ALLOCATION IS FAIR

Approval of a plan to allocate settlement funds to class members is governed by the same standard that applies to approval of settlement terms—the distribution plan must be "fair, reasonable and adequate." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951, at *216 (N.D. Cal. Jan. 28, 2016); *In re Omnivision Tech.*, 559 F. Supp. 2d at 1045 (N.D. Cal. 2008). A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.)

Here, all Class Members will receive a proportionate share of the Settlement fund based upon the total number of weeks that they worked for Defendant. This is a fair and adequate distribution of potential settlement funds based on plaintiff's rest break and unpaid wage claims.

## V. CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Parties' Collective and Class Action Settlement be finally approved and seek and seek an Order from this Court for the following:

(1) Approving a proposed collective and class action settlement with Defendant Ladera Lending, Inc.;

(2) Issuing final certification of the Rule 23 Class for purposes of settlement;

(3) Approving Class Representative Deborah Ochinero's Service Award;

(4) Approving Class Counsel's Fees and Costs; and

(5) Approving the fees of the Settlement Administrator.

Dated: June 21, 2021    Respectfully Submitted:

/s/Joshua D. Buck                         .
JOSHUA BUCK
THIERMAN BUCK LLP

JAMES B. ZOURAS
STEPHAN ZOURAS, LLP

*Attorneys for Plaintiff, the general public, and all others similarly situated*